MARGARET MYERS, APPELLANT, V. FREDERICK MYERS, APPELLEE.

FILED FEBRUARY 28, 1911. No 16,263.

1. **Divorce:** EXTREME CRUELTY. There may be extreme cruelty justifying a decree of divorce without physical injury or violence. Unjustifiable conduct on the part of husband or wife, which utterly destroys the legitimate ends and objects of matrimony, may constitute extreme cruelty.

2. ————: PRIOR AGREEMENT AS TO PROPERTY. A contract between husband and wife without permanent separation, which provides that each party shall control the income of certain specified property accumulated by their joint efforts with other similar provisions, was rightly held by the trial court to be temporary in its nature, and not binding upon the court in entering a decree of absolute divorce in an action brought several years after making the said contract.

3. ————: ALIMONY. Property which has been accumulated by the joint efforts and economy of husband and wife, and the title for convenience or by accident taken in the name of the wife, may, upon granting an absolute divorce, be adjudged to be property of the husband with suitable allowance to the wife as permanent alimony.

4. ————: ————. An allowance of $4,000 alimony to the wife, upon a decree of divorce in favor of the husband, will not be changed upon appeal of the wife, the total property of the husband being found to be $8,000 above incumbrances, and there being no special circumstances justifying a larger allowance.

APPEAL from the district court for Lancaster county: WILLARD S. STEWART, JUDGE. *Affirmed.*

*Tibbets & Anderson* for appellant.

*A. W. Lane, contra.*

SEDGWICK, J.

The plaintiff began this action in the district court for Lancaster county to obtain a divorce from the defendant. The defendant filed an answer and cross-petition asking for a decree of divorce in his favor, and asking that certain real estate, the title to which had been taken in the plaintiff's name, should be decreed to be the property of the defendant. The plaintiff dismissed her petition, and the action was tried upon the cross-petition of the defendant. The court found the issues in favor of the defendant, and entered a decree of divorce, and that the property specified was his property, and allowed the plaintiff permanent alimony. The plaintiff has appealed to this court.

45

These parties were married in New York state in 1872, and removed to Lancaster county, this state, in 1878, where they have since resided. Four children have been born to them, one of whom died in infancy, and the remaining three are of legal age. The youngest, a daughter, is living with her mother. The other daughter and a son are married and living by themselves. Neither of these parties had any property at the time of their marriage. Both of them have been industrious, frugal, and economical, and they have accumulated property of the value of from $8,000 to $12,000, consisting of a farm of 80 acres in Lancaster county and several town lots and small buildings in Lincoln. The defendant testifies that their trouble began about 12 years ago. The plaintiff's testimony is substantially the same upon this point, except that she states that earlier in their married life the defendant was too careful of expenses and neglected to furnish her with money as she thought he should have done. The evidence in the case consists wholly of the testimony of the plaintiff and defendant, their children and son-in-law, and a woman who testified briefly to some circumstances that she had observed in their manner of living. The members of the family were examined somewhat at length, and the record is voluminous.

Without going into an analysis of the evidence, it is sufficient to say that all the witnesses testify to conditions existing for many years that would be intolerable in any family, and they express themselves generally as believing that it would be impossible for these parties to live together as husband and wife. It seems that this conclusion is justified from this evidence. Several years ago this defendant began an action for divorce in the district court for Lancaster county. It appears that the matter was heard by the court at that time, and, although this record does not show very fully what was done, it is conceded that the court after hearing the evidence advised the parties to abandon those proceedings and endeavor to live together as they should. This was accordingly done, but

it immediately developed that the same conditions existed as before, and, instead of improving, matters became worse. The defendant testifies that he cannot possibly live with the plaintiff; that the conditions are such that his health and even his life are in danger, and the plaintiff and the children testify to substantially the same thing. The plaintiff's petition having been dismissed, the difficult duty devolved upon the trial court to determine whether the conduct of the plaintiff toward the defendant has been of such a nature as to furnish him just grounds for a decree of divorce. The evidence of the defendant shows conclusively that he is an honest and sincere man. It is impossible to doubt the truth of his statements as to any matters of fact within his knowledge, and this is substantially true of the plaintiff, as well as the other members of this family. No acts of personal violence were testified to by any of them. The difficulty in the case is to determine from this evidence which party is responsible for the conditions which existed which made their separation unavoidable. That the defendant was very careful and saving of his finances there is no doubt. That this sometimes resulted in his denying, or at least hesitating to furnish, reasonable necessities for his wife seems probable; and yet the defendant testifies that their trouble originated in the management of the children and other similar matters; that he desired that the children be kept in school at the time when they were from 12 to 15 years of age, or, if they left school, that they be required to work and help to support the family, and named some other things of a similar nature that he thinks started the difficulty between them. He also states that his wife refused to consent to his desired changes in the management of the property, and details many circumstances in that connection which he thinks show that she desired to make him trouble. She testifies that the whole trouble arose from their property arrangements, and it would seem from the evidence that this had much to do with the matter. When they bought the farm, and also when they bought some of

their other real estate, the titles were taken in the name of the wife. It appears that neither of the parties gave much thought to this matter at the time. Both apparently considered that it was quite immaterial which held the legal title, but later, when things were not as pleasant between them as they had been, the plaintiff began to assume that the property which stood in her name was her property, and not the property of the family. When the defendant realized that all this property was beyond his reach and control, the trouble between them became serious. It is sometimes said that the husband is the head of the family, and that the determination of matters in regard to the family property ultimately rests with him. For some purposes the law so considers it. The trial court heard these witnesses, saw their demeanor toward each other, their manner of testifying and their general conduct, and he may have concluded from this evidence that the theoretical position as to the head of the family was in this case reversed. The defendant testifies that plaintiff allowed him but one bureau drawer in which to keep his clothes; that she didn't allow him to use the writing desk; that she took his pictures and Grand Army relics from the walls and threw them in the kitchen; that he had to lie on the kitchen floor to rest when she had company; and that when his son, then about 15 years of age, "took a chair to him," she did not stop the boy, did not tell him he should not do it, "didn't even open her mouth." She told him at one time that she was almost persuaded to break up the home, and finally said she would do it. On one occasion when the daughter was present and threatened him with the "fire poker," her mother did not interfere. The plaintiff says it was the lamp lighter, and not the fire poker, and that she herself held it in her hands and flourished it somewhat, and that the defendant then went out. From this and much more such evidence in the record, together with the appearance and manner of the witnesses, the trial court might have concluded that plaintiff herself was more responsible for the conditions

that existed than was the defendant. We do not find evidence in the record that requires us to come to a different conclusion, and in this view of the case the decree of divorce in favor of the defendant is sustained by the evidence.

In March, 1906, these parties entered into a written contract, reciting that differences had arisen between them, and that they desired to "provide for the division of the income of the real estate that stands in the name of the parties," and then it provides that neither party shall be responsible for the maintenance, care or support of the other, and that the defendant shall have the income of certain real estate, and that the plaintiff shall have the furniture and household effects and the income from certain other real estate. The agreement also provides that it should in no way affect the title to said real estate, except as to the interest expressly agreed, and that, in case of the death of either party, the survivor should have a life interest in all the property, the remainder to the children. It is conceded by both parties that this contract was not made in view of a divorce or final separation of the parties. The trial court found that the contract was temporary in its nature, and could not control in the determination of the rights of the parties in the property upon a divorce being granted, and in this we think the trial court was clearly right.

The court found that the real estate was in fact the real estate of the husband, and that the title taken in the name of the wife was without any agreement or intention to make it the property of the wife. The plaintiff urgently contends that the trial court was in error in this. When property is accumulated by the industry and careful economy of both husband and wife, it should be considered as the property of both. The fact that the property is paid for with the earnings of the husband, when those earnings are made possible by the care, thrift and economy of the wife, does not necessarily make it the exclusive property of the husband. If the title is taken

in the name of one of them for convenience or by accident, the real rights of the parties are not affected thereby. If the husband conveys property to his wife, there may be a presumption, in the absence of any evidence, that it was intended as a gift, and the title may in such case become fixed in her; but, when all the evidence in regard to the transaction is before the court, it devolves upon the court to determine what the real intention of the parties was. Our law, as it has been construed, unfortunately does not allow the court to make an equitable division of real estate in divorce actions. We think the court did right to treat this property as though it were in the name of the husband and to allow the wife suitable permanent alimony, which is the course our law has been construed to provide.

The court found the value of the property to be $9,000, with $1,000 indebtedness, and decreed that the defendant pay the plaintiff $4,000 alimony. We do not find anything in the evidence requiring us to modify this decree in favor of the plaintiff. The case is an unfortunate one. It devolved a delicate and difficult duty upon the trial court. We do not feel certain that we can do better than the trial court has done.

The judgment of the district court is therefore

AFFIRMED.