SAMUEL WHITE, APPELLANT, V. DELLA WHITE, APPELLEE.

FILED DECEMBER 29, 1924. No. 22904.

1. **Divorce:** ALIMONY. Upon a divorce of the wife for extreme cruelty, the court may decree her such alimony out of the estate of her husband as it shall deem just and reasonable. having regard to the ability of the husband, the character and situation of the parties, and all other circumstances of the case.

2. ———: ———: ANTENUPTIAL CONTRACT. Even a valid antenuptial contract, not being made in contemplation of divorce, cannot absolutely limit the amount of an award of alimony to the wife upon divorce obtained by the husband for the wife's fault, though it should be considered by the court with other evidence on that point.

3. ———: ———. Evidence examined, and the decree of the district court awarding the appellee and cross-petitioner, though at fault and divorced, $17,000 of alimony out of her husband's estate valued at $110,000, approved.

APPEAL from the district court for Seward county: EDWARD E. GOOD, JUDGE. *Affirmed.*

*Thomas, Vail & Stoner,* and *Norval Bros., Colman, Landis & Mastin,* for appellant.

*C. E. Sandall, Arthur G. Wray, O. S. Gilmore, John Riddell* and *McKillip & Barth, contra.*

Heard before MORRISSEY, C. J., DEAN and DAY, JJ., REDICK and SHEPHERD, District Judges.

SHEPHERD, District Judge.

Mr. White sued Mrs. White for a divorce, alleging extreme cruelty in three counts or causes of action. She had falsely accused him of having a loathsome venereal disease; upon occasion she had attacked him, called him a liar, and shaken him; at divers other times she had flown into fits of rage against him, in one of which she menaced him with a stool and threatened she would knock his brains out. He declared that this cruelty had brought him great grief and humiliation, resulting in ill health. Mrs. White filed

an answer and cross-petition denying these charges, and alleging a long course of ill treatment on her husband's part, including kicks and blows, verbal abuse and vile names, intoxication, threats, undue sexual demands, meanness in money matters, and so forth in great detail.   She averred that such ill treatment had caused her great mental suffering and had destroyed her bodily health.   She also alleged an antenuptial contract, but says that it was procured through misunderstanding and fraud.   All of this Mr. White denied.   Upon trial more than 75 witnesses were sworn and 3,000 pages of record were made.

On the issue of divorce the court found that both parties were at fault, found that there was more corroboration of the plaintiff's case on cruelty than there was of the defendant's, and found generally in favor of the former and against the latter.   The court gave the plaintiff a divorce and awarded the defendant $17,000 of alimony.   Appealing, the plaintiff assigns as error the finding and decree allowing the defendant permanent alimony in the sum mentioned.

The pair were married June 15, 1915.   White was 60, Mrs. White about 40. The former's first wife, by whom he had nine sons and daughters, was then three years deceased.   The latter's husband had been dead a year.   White, who was worth in the neighborhood of $110,000 had grown tired of keeping house for his girls (two of them were still in school) and greatly desired a home and a wife.   Mrs. White, then the widow Potter, had little of this world's goods, but was comparatively young, somewhat accomplished, attractive, not averse to a good home, and willing to marry the right man.   In a very natural way the two met and became interested in each other, and the male seems to have prosecuted his suit with all of the ardor so frequently observed in a vigorous old man of 60, bereft of the mate of his youth and seeking a companion for his declining years.

Such marriages are not infrequently unhappy after a year is gone.   And it was so in the instant case.   The pair

were ill-assorted. Their ways were different; the man was set in his, and the woman in her's; and neither of them appears to have had the rare temper of mind and heart to take them over their rough places. When youth weds youth nature gives bond to the union, but age must fill the place of that bond with forbearance and patience and philosophy, not forgetting a soothing and a saving humor. These parties did not measure up to the requirements of a successful second marriage experience.

Considering that the plaintiff was the possessor of property worth $110,000, the court's decree for alimony in the sum of $17,000 would not ordinarily be questioned. Since the case of Edholm v. Edholm, 99 Neb. 331, such an award to the unsuccessful wife, even though she were at fault and even though she contributed nothing to her husband's estate, would be within the sound discretion of the court.

The point of this appeal lies largely in the fact that there was an antenuptial agreement in the case which provided that Mrs. White was to receive $10,000 and that sum only, at the plaintiff's death, and her heirs only $5,000 in the event of her death theretofore. The agreement also contained a provision that White was to have the power of disposal of any or all of his property at any time during his life, with or without his wife's consent. It was a hard contract, because it provided a means whereby the plaintiff could make himself penniless and leave his wife without a dollar. And it should be said in passing that it was entered into without much time for study or deliberation on her part and with no opportunity whatever for consultation with her friends, being handed to her almost literally with her marriage ring. Nevertheless appellant maintains that it was a valid contract and bases his complaint mostly upon it, it being his contention that she should not be permitted to recover more than the $10,000 provided for in said agreement, and that the court had no discretion to award a greater sum.

Arguing upon the court's finding that the defendant was guilty of cruelty, the appellant strongly urges that it is

repugnant to equity to say that a woman who has entered into an antenuptial contract may by her own fault terminate the ensuing marriage relation, and then secure a greater sum by way of permanent alimony than she would have received had she been a good wife and had she survived her husband. This may immediately be answered by the observation that, if the fault be one that is wickedly planned and practiced, the court will take notice of the fact and deal with the party accordingly; while, if it be without premeditation or malice, it may chance under some circumstances that the woman, though at fault, is in good conscience entitled to better treatment than the contract provides. But the ultimate answer, conceding that the contract was fairly obtained, is that the matter of divorce was not contemplated by the parties and not anticipated in the contract; and the law provides that in every divorce for any cause excepting that of adultery committed by the wife the court may " decree to her such part of the personal estate of the husband and such alimony out of his estate as it shall deem just and reasonable, having regard to the ability of the husband, the character and situation of the parties, and all other circumstances of the case." Comp. St. 1922, sec. 1533. The statute has made no exceptions in the case of an antenuptial contract, and the power is vested in the trial court to make fair and fitting award not limited by the provisions of such contract. The contract may be in evidence, among other evidence, as to the amount to be awarded, but no more.

The course of judicial decision in Nebraska indicates a tendency on the part of the courts to deal generously with the unsuccessful wife in those cases where the fault is not intentionally planned and maliciously practiced. Nor does this tendency depend alone upon consideration of mercy or upon the obligation of the husband to support, but rather upon the theory of protecting the marriage relation and safeguarding society. In other words, the court deals with the guilty wife, in cases where the husband has ample means and is himself also at fault, so that if she is suffer-

White v. White.

ing from sickness or specific disability she may have relief, and so that in any case she shall not be led by financial distress into dissolute or abandoned ways. This is the true rule, at once honoring the marriage relation, safeguarding the state which has an interest in it, and doing justice and equity between the parties. It goes without saying that in applying the rule the trial court must be reasonable and not abuse its discretion.

We think that the trial court was entirely within the limits of reason and sound discretion here. White was not a dullard deceived. He was not a feeble old man beguiled. He was a hale and vigorous individual of 60, successful in business and of means and opportunity to look about him in his choosing. No one can read the voluminous record without conviction that he led the way into this marriage. He was guilty of cruelty only less than that of the appellee. The record shows it; the trial court decided it. When his wife was urging a reconciliation, he repulsed her, shifted his residence to Seward and began this suit. The record shows her at the trial sick and emaciated, suffering from a toxic goiter, affected with a pelvic ailment, in the turmoil of a lawsuit which promised to exhaust her strength and take her means. As a matter of fact, the trial ran through a dozen days, not to speak of months of preparation. There were clouds of witnesses and well-nigh clouds of attorneys. The costs, including fees, must have been very great. The record is one of the largest every brought to this court. We are satisfied that in the decree rendered the judge followed the statute, considering the ability of the husband, the character and situation of the parties, and all other circumstances of the case. 1 R. C. L. 77, sec. 77; *Wyrick v. Wyrick*, 88 Neb. 9; and, certainly by inference, in *In re Estate of Enyart*, 100 Neb. 337. It is stated in 1 R. C. L., *supra*, as follows: " The determination of the amount of permanent alimony is controlled by no fixed standard, but rests, rather, in the sound discretion of the court, which, being judicial in character, is not liable to be reviewed by an appellate court except where it is evi-

dent that there has been a clear abuse thereof." And in *Wyrick v. Wyrick*, 88 Neb. 9, the court said: "It thus appears that in awarding alimony, in an action for divorce, the district court is clothed with a fair measure of discretion. Indeed, it was frankly conceded upon the argument, by counsel for the appellant, that it was incumbent upon them to show that the trial court in this case had abused its discretion in fixing the amount of alimony in order to entitle the plaintiff to a decree of this court increasing the same."

Counsel on both sides devote pages of their briefs to a consideration of whether or not the antenuptial contract in question was valid. Appellant states in substance that the trial court concurred with counsel for the appellee in the view that upon the authority of the *Enyart* case it was void and unenforceable. We are of that opinion. The language of the opinion in that case may well apply to the situation in this: "While it appears that Katherine Richardson desired to marry for a home for herself and daughter, and it is very probable that, even if fully informed as to Enyart's estate, she still would have signed it, the contract, construed as Enyart intended it to mean, is unconscionable, not in accordance with the duties which the law imposes upon a husband in the marital relation, and its terms are such that it ought not to be enforced. *Isaacs v. Isaacs*, 71 Neb. 537."

The amount given the wife was too small, and, as we have seen, under the terms of the contract even that was not assured. She was too much hurried into it. *Warner's Estate*, 207 Pa. St. 580, cited in the *Enyart* case. And she cannot be said to have had the complete information as to a wife's rights necessary to justify a contract by which she was to receive so little.

On either phase of the controversy, the court was vested with the right, the discretion, and the duty to award according to the statute so often quoted. Considering all, it dealt liberally with the appellee, yet not so liberally as

856        NEBRASKA REPORTS.        [VOL. 112

State, ex rel. Davis, v. Kilgore S⁺ate Bank.

to lead the court to decide that it abused its discretion, or acted in any wise unreasonably.

We hold that the decree of the district court should be affirmed, and it is so ordered.

AFFIRMED.

Note—See Divorce, 19 C. J. secs. 578, 582, 588, 614.