RUTH H. KROGER, APPELLANT, V. ERNEST G. KROGER,
APPELLEE.

44 N. W. 2d 475

Filed October 31, 1950.    No. 32829.

*Sterling F. Mutz,* for appellant.

*Mayer & Mayer, Harold A. Prince,* and *W. P. Lauritsen,*
for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is a divorce action appealed from the district court for Hall County by Ruth H. Kroger, plaintiff below. She complains of that part of the decree awarding a divorce to Ernest G. Kroger on his cross-petition and awarding her alimony in the sum of $10,000. He cross-appeals from the allowance of the alimony.

We shall herein refer to Ruth H. Kroger as appellant and Ernest G. Kroger as appellee.

The questions involved by the appeal and cross-appeal relate themselves to the issue of who is entitled to the divorce, if either, and the amount of alimony that should be allowed. Since the matter is here for our consideration de novo we shall discuss these issues generally.

Appellant and appellee were married on June 21, 1944, at Osborne, Kansas. They did not immediately hold themselves out in Grand Island, Nebraska, their home city, as man and wife. They did not do so until after they were remarried at Staplehurst, Nebraska, on April 3, 1945. It was the second marriage for both. Their respective first spouses were deceased and the family of each had already grown to maturity. At the time of the trial he was 61 years of age and she was 51. She had two sons by her first marriage of which the elder was killed in action during World War II. This occurred shortly before the remarriage of the parties on April 3, 1945. He had a family of four children consisting of three sons and a daughter.

Appellee, without disclosing in particular just what it was he complained of, alleged in his cross-petition that appellant had in divers ways been guilty of conduct toward him that constituted extreme cruelty and that such conduct had the effect of destroying the legitimate objects of their marriage. The trial court found generally that appellant had been guilty of conduct toward appellee

which constituted extreme cruelty and awarded him a decree of divorce on that basis. However, in his testimony, appellee limited his complaints as to her conduct as follows: "* * * that one weakness (her use of intoxicating liquors) that was causing our trouble."

The evidence shows that on several occasions during their married life that both appellee and appellant indulged in the use of intoxicating liquors. Usually the appellee purchased the liquor or furnished the money to buy it with. On such occasions the appellee's use thereof was always very moderate and never to excess. However, on a few of these occasions it would appear appellant indulged therein to such an extent that she either became intoxicated, sick, or both.

The evidence falls far short of establishing that the appellant had become "an habitual drunkard" within the meaning of subdivision 5 of section 42-301, R. S. Supp., 1949. Neither do we find her conduct in this respect, insofar as it is shown by the record, to be of such a character that it would support a finding that it constituted "extreme cruelty" within the intent and meaning of section 42-302, R. S. 1943.

However, we are not called upon to base our decision solely on such finding. Section 42-335, R. S. 1943, provides: "No decree of divorce and of the nullity of a marriage shall be made solely on the declaration, confessions or admissions of the parties, but the court shall, in all cases, require other satisfactory evidence of the facts alleged in the petition for that purpose."

While we have said in Green v. Green, 148 Neb. 19, 26 N. W. 2d 299: "It is impossible to lay down a general rule as to the degree of corroboration required in a divorce action as each case must be decided on its own facts and circumstances."

However, as held in O'Reilly v. O'Reilly, 120 Neb. 720, 234 N. W. 916: "No decree for annulment of a marriage can be lawfully entered unless the allegations of the petition for annulment are supported by satisfactory evi-

dence other than the admissions of the parties." Therein we stated: "* * * even had this conversation occurred and had she made such admission, under the provisions of the statute above quoted, such evidence was insufficient to entitle plaintiff to the annulment of the marriage contract." The foregoing applies to a decree of divorce.

Appellee testified to instances when he claims appellant was intoxicated in the presence of others and of her conduct at such times. However, he did not attempt to have any of the parties present on such occasions testify as to her condition or conduct at the times of which he makes complaint. Outside of his testimony, and such admissions as she made, we find no other evidence in the record sufficient to corroborate his contention that her condition and conduct on such occasions were of such a character that it had the effect of destroying the objects and purposes of their marriage.

There is also evidence in the record, adduced on the cross-examination of the appellant, that she made two trips while appellee and his son were in Canada. This occurred in 1945. The first of these trips was to Omaha, Nebraska. Appellant drove her car and took with her a lady friend from Grand Island. While in Omaha they visited a night club and then stayed overnight in Omaha at the home of some married friends of the Krogers. It is true that the character of this lady friend was apparently not of the best but there is nothing in the record to show that the appellant did anything on this trip to cast any reflection on herself. Neither does the evidence show that she continued to associate with this person. Appellee had not been aware of the fact that she had made this trip until she testified thereto at the trial.

- The second trip was to North Platte, Nebraska. This trip was made by train. There she visited a lady friend and stayed overnight in her apartment. Apparently this friend was also not of the highest character. However, there is nothing in the record to show appellant

did anything on this trip to cast any reflection on herself. While she was in touch with this person at a later date, however, the record does not show that she again associated with her socially. Apparently appellee was also unaware of these facts until the time of the trial.

What has already been said with reference to the evidence as it relates to the appellant's use of intoxicating liquors is applicable here. There is nothing in these facts to justify a decree of divorce in favor of the appellee.

We find that the appellee was not entitled to a decree of divorce on his cross-petition and that the trial court was in error in granting him a divorce thereon.

Appellant likewise sought a divorce on the grounds of extreme cruelty without specifically setting forth the acts of which she complained as a basis therefor. In this respect she testified as to appellee's conduct toward her during their entire married life. These acts related to neglect, pouting, outbursts of temper, and refusal to talk with her over long periods of time. They also related to his conduct as being rude, sarcastic, and indifferent.

Appellee admits that, among other things, he scolded her, shamed her, and tried to keep from talking with her. He says he did this in an endeavor to correct her of the one habit he says was causing their trouble. That he was guilty of the things of which appellant complains finds support in the testimony of her son, Kenneth Walker, and that of Louis McKenzie.

Appellant also testified to one occasion when appellee used physical force on her in an attempt to make her do as he wanted. Whether, under the circumstances as appellee described them, his conduct was justified we need not decide for standing alone it does not find sufficient corroboration within the meaning and intent of our statute. However, such fact is not here absolutely controlling for as stated in Green v. Green, *supra,* we said: " 'There may be extreme cruelty justifying a decree of divorce without physical injury or violence. Un-

justifiable conduct on the part of husband or wife, which utterly destroys the legitimate ends and objects of matrimony, may constitute extreme cruelty.' Myers v. Myers, 88 Neb. 656, 130 N. W. 254. See, also, Faris v. Faris, 107 Neb. 214, 185 N. W. 347."

The evidence establishes conduct on the part of the appellee, during most of their married life, which cannot be justified under the facts and circumstances out of which it arose. This conduct sometimes continued over long periods of time and it had the effect of destroying the objects and purposes of the marriage. As such it constituted extreme cruelty within the intent and meaning of our statute. In view thereof the appellant was and is entitled to a decree granting her a divorce from the appellee.

Having had difficulties in the spring of 1949 the parties attempted a reconciliation thereof in June of the same year. This lasted until September. Appellant contends that because of the attempted reconciliation there was a condonation by appellee of her previous conduct which now defeats his right to base any action thereon. This, because there is no evidence in the record that she has used intoxicating liquors since April 1949 except on a doctor's order. In view of our holding it will not be necessary to discuss this question and the legal principles cited as applicable thereto.

Appellant complains because the court refused to specifically enforce the antenuptial agreement entered into by the parties on June 15, 1944, and because the court canceled and annulled it. This agreement contemplated marriage and was fairly entered into by the parties. It provides, among other things, that appellant thereby relinquished all her right of control of and inheritance in appellee's property. However, it provides that she is "entitled to her support from first party (appellee) during his lifetime, and need use no part of the income of her property for that purpose." It also makes certain provisions for her during the balance of

her life in case appellee dies first. This agreement gave her certain rights as long as she did not breach the contract by her conduct, that is, if she so conducted herself that she did not destroy the objects and purposes of the marriage which were contemplated by the agreement.

As stated in Maxwell v. Maxwell, 106 Neb. 689, 184 N. W. 227: "It is too firmly established in the jurisprudence of this state to be questioned that in a divorce suit, where the court has jurisdiction of the parties, it has power to adjust all their respective property interests." See, also, Bigelow v. Bigelow, 131 Neb. 201, 267 N. W. 409; Resnick v. Resnick, 137 Neb. 256, 288 N. W. 816; Lippincott v. Lippincott, 144 Neb. 486, 13 N. W. 2d 721.

Under this principle, with reference to antenuptial contracts, we said in White v. White, 112 Neb. 850, 201 N. W. 662: "But the ultimate answer, conceding that the contract was fairly obtained, is that the matter of divorce was not contemplated by the parties and not anticipated in the contract; and the law provides that in every divorce for any cause excepting that of adultery committed by the wife the court may 'decree to her such part of the personal estate of the husband and such alimony out of his estate as it shall deem just and reasonable, having regard to the ability of the husband, the character and situation of the parties, and all other circumstances of the case.' Comp. St. 1922, sec. 1533 (now section 42-318, R. S. Supp., 1949). The statute has made no exceptions in the case of an antenuptial contract, and the power is vested in the trial court to make fair and fitting award not limited by the provisions of such contract. The contract may be in evidence, among other evidence, as to the amount to be awarded, but no more."

The provisions of this antenuptial agreement, and all the rights of the appellant thereunder, will be taken into consideration and settled in determining the amount she should receive as it is part of their property rights and

interests which the court has power to adjust.

We have often stated the factors that should be considered in determining the question of alimony or division of property between the parties in case a divorce is granted.

As stated in Peterson v. Peterson, 152 Neb. 571, 41 N. W. 2d 847: "In the division of property and allowance of alimony in a divorce action, the court, in the exercise of judicial discretion, should consider the estate of the parties, if any, at the time of the marriage and their contributions since; the duration of the marriage; the wife's loss of interest in the husband's property by virtue of the divorce; the social standing, comforts, and luxuries of life which the wife would probably have enjoyed; the conduct of the parties leading up to the divorce; to which party the divorce was granted; the age, condition of health, and earning ability of the parties; and all other relevant facts and circumstances; and make such an award as appears to be fair and equitable."

Also in Nickerson v. Nickerson, 152 Neb. 799, 42 N. W. 2d 861: "In determining the question of alimony or division of property as between the parties the court, in exercising its sound discretion, will consider the respective ages of the parties to the marriage; their earning ability; the duration of and the conduct of each during the marriage; their station in life, including the social standing, comforts, and luxuries of life which the wife would probably have enjoyed; the circumstances and necessities of each; their health and physical condition; and their financial circumstances as shown by the property they owned at the time of the divorce, its value at that time, its income-producing capacity, if any, whether accumulated or acquired before or after the marriage, the manner in which it was acquired, and the contributions each has made thereto and, from all the relevant facts and circumstances relating thereto, determine the rights of the parties and make an award that is equitable and just."

The evidence shows that at the time of the marriage in June 1944 appellant was successfully operating a beauty parlor in Grand Island. She also owned two houses located there. These she had liquidated by March 1946 and received therefrom a net of $6,125. At the time of the trial in January 1950 appellant was again operating the beauty parlor but not very successfully. This was partly due to lack of business but also to the fact that she was no longer able to regularly perform the duties of an operator. In addition to the beauty parlor, which is probably worth $1,500, appellant has the possibility of recovering from her son Kenneth the sum of $3,800. This amount she had advanced to him for the purpose of purchasing the equipment in his office. Her son is an optometrist, having graduated as such in June 1948. He thereafter opened an office in Grand Island in October of that year.

Appellee was at the time of the marriage and still is a district judge. During the period of their marriage, which covers the years 1944-1949, inclusive, he had an annual over-all income of about $10,000. After paying income taxes, this was reduced to about $8,100. When the parties were married he had real and personal property of the reasonable net value of about $61,000. At the time of the divorce, because of increased values and the savings that had been made from his income, this had increased to about $104,000. During this same period he had given his children a total of about $10,500.

Taking into consideration all the facts, as disclosed by the record, we find the amount of alimony awarded appellant to be too small. It should be increased to $20,000, payable $3,500 in cash within 30 days from the entry of a decree by the district court in accordance herewith and the balance at the rate of $125 a month commencing with the first of the month following the entry of such decree and continuing until it is fully paid.

There are certain findings by the trial court with

reference to specific personal property which are decreed accordingly. The decree also restored to appellant her name of Ruth H. Walker and taxes the costs to appellee. None of these are questioned by this appeal and insofar as they are concerned the decree of the trial court is affirmed.

We therefore remand the cause to the district court with directions to modify its decree in accordance herewith, that is, that the divorce be granted to appellant on the grounds of extreme cruelty and that the alimony be increased to $20,000 payable as herein provided. However, in all other respects the decree is to stand as originally entered. Costs of this appeal are taxed to the appellee.

REVERSED AND REMANDED
WITH DIRECTIONS TO MODIFY.