CONNIE K. GARTSIDE, APPELLEE AND CROSS-APPELLANT, V. ROBERT GARTSIDE, APPELLANT AND CROSS-APPELLEE.

146 N. W. 2d 777

Filed December 9, 1966. No. 36296.

Lee A. Larsen and Thomas Stephens, for appellant.

Weber & Robinson, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, and McCOWN, JJ., and FLORY, District Judge.

WHITE, C. J.

This is a divorce action. From a decree awarding the plaintiff a divorce, child support in the sum of $40 per week, and alimony in the sum of $1,500, the defendant appeals. Plaintiff cross-appeals, praying for an award of additional alimony.

The parties, now in their twenties, were married March 24, 1961. They have two children, girls, who were born on November 9, 1961, and on April 26, 1963. They lived in Missouri on a farm until December 4, 1963, when they moved to Sarpy County, Nebraska. Defendant worked at two different jobs in Nebraska and was earning $108 per week at the time of the separation on January 13, 1965, the date the petition was filed. Defendant returned to Missouri, where at the time of the decree, he was engaged in farming on his father's farm. The petition alleges extreme cruelty as grounds for divorce. The parties' domestic troubles apparently began about July 1964. Plaintiff testified that during this period of time the defendant used vile and abusive language toward her; that he drank to excess and, as a result thereof, became abusive and violent, such conduct occurring in front of their two children; that he struck her; and that he unjustly accused her of improper conduct with another man. The plaintiff's testimony is undisputed.

The plaintiff testified as to different and specific instances. On July 23, 1964, at a birthday party for the plaintiff's brother-in-law, Francis Card, plaintiff awakened the defendant and asked him to go home, and he responded by calling her a series of extremely vile and abusive names which will not be repeated here. This undenied testimony was corroborated by two other witnesses who were present at the party. In August 1964, the defendant, after an argument, struck the plaintiff four or five times on the shoulder with his open hand. There was no direct corroboration of this incident, but the witness, Ethel Card, testified that the defendant ad-

mitted to her he had struck the plaintiff in this manner at the time in question. At another social gathering in October 1964, plaintiff testified that the defendant became intoxicated, stated he was going to vomit in one of the desk drawers in the house, and when plaintiff protested, he called her a vile and abusive name. This incident was corroborated by the witness, Roberta Card. The evidence shows that some of the incidents testified to by the plaintiff occurred in front of the children. Plaintiff also testified that the conduct of the defendant on these occasions and generally had destroyed the legitimate objects of matrimony and she could not continue living with him.

The evidence also shows that, despite this conduct, the plaintiff and defendant continued living together and having marital relations until on or about December 4, 1964. Subsequent to that time there is testimony that the defendant continued to call the plaintiff vile and obscene names. Plaintiff testified that the defendant's conduct in this respect had become progressively worse during this period of time. The witness, Francis Card, testified that in the month of December he was present when the defendant called the plaintiff vile names at their home. The evidence shows that on December 23, 1964, the defendant's birthday, there was a party at his home; that he arrived home in an intoxicated condition; and that when his wife asked him to wipe up some coffee he had spilled while unwrapping presents, he called her a vile and obscene name. This was in the presence of a number of people and the children of the parties. The use of the vile language and the other circumstances were corroborated by the witness, Ethel Card. The plaintiff testified that on January 12, 1965, the day before the filing of the petition in this matter, the defendant had accused her of running around with another man and had kicked her and pushed her back into the refrigerator. The witnesses, Ethel Card and Virginia Rees, both testified the defendant had admitted

to them that he had struck his wife on January 12, 1965, and did so because "he was mad, or else he was drunk." Other witnesses besides the plaintiff testified as to the violent temper of the defendant; that he became intoxicated in the presence of his wife and children; and that during such times he used vile and loud language and was abusive to his wife and anybody who was present. There is also evidence of other incidents, including physical abuse of the children, which we do not deem necessary to repeat here. All of this testimony stands undenied in the record by the defendant.

From the above review of the evidence it can readily be observed that there is ample testimony to support the charge of extreme cruelty. However, defendant's first contention is that plaintiff condoned the actions of the defendant. It is true that condonation is ordinarily complete if there is a resumption of marital relations after alleged breach of marital duty. Ross v. Ross, 174 Neb. 795, 119 N. W. 2d 495; Sewell v. Sewell, 160 Neb. 173, 69 N. W. 2d 549. The evidence does show that the parties continued marital relations until on or about December 4, 1964. The undenied testimony is that they did not have marital relations after that time. There appears, therefore, from the testimony, little question but that the actions of the defendant were condoned up until the first part of December 1964. However, the rule is that condonation is forgiveness for the past upon condition that the wrong shall not be repeated. It is dependent upon future conduct, and a repetition of the offense revives the wrong condoned. Workman v. Workman, 164 Neb. 642, 8 N. W. 2d 368; Waldbaum v. Waldbaum, 171 Neb. 625, 107 N. W. 2d 407; Anderson v Anderson, 89 Neb. 570, 131 N. W. 907, Ann. Cas. 1912C 1; Eicher v. Eicher, 148 Neb. 173, 26 N. W. 2d 808. As previously recited, the evidence clearly shows that the defendant continued his previous course of conduct and used vile and abusive language toward the plaintiff in December 1964. These acts, besides constituting ex-

treme cruelty themselves, revive the previous wrongs condoned. There is no merit to this contention.

Defendant's next contention is that subsequent to plaintiff's condonation and forgiveness there was not satisfactory evidence of corroboration to establish grounds for divorce. It is impossible to lay down any true and general rule as to the degree of corroboration required in a divorce action as each case must be decided on its own facts and circumstances. Workman v. Workman, *supra*. However, in this case, the evidence shows that the defendant, without provocation, continued to call the plaintiff vile and abusive names in the month of December 1964, after the cessation of marital relations. The witness, Ethel Card, testified as to the use of such language by the defendant while present at the party on December 23, 1964, and the witness, Francis Card, testified that he heard the defendant call the plaintiff vile and abusive names during the month of December 1964. It is also significant that the defendant did not deny this testimony. There is no merit to this contention.

We come to the conclusion, after a review of the record, that there is ample corroborated testimony establishing the plaintiff's charges of extreme cruelty and that the trial court's award of an absolute divorce to the plaintiff was correct.

The next contention of the defendant is that the award of child support in the sum of $20 per week per child is excessive. Plaintiff introduced no evidence as to the defendant's earnings at the time of trial. He is farming in Missouri. The children are under school age and are healthy. The only evidence relevant to this issue is that the total expenses for the support of the plaintiff and the two children were in the sum of $182.50 per month. The proper proportionate amount of this sum to be allocated to the support of the two children is for this court to determine. The substance of defendant's contention is that the amount awarded should be reduced to the approximate sum of $120 per month. We

agree. We determine that the proper amount of child support to be awarded in this case, under all of the circumstances, is the sum of $60 per month per child or a total of $120 per month.

The only remaining question is the plaintiff's cross-appeal from the allowance of alimony in the sum of $1,500 payable at the rate of $25 per month. Evidence in this respect is inadequate, particularly with reference to the valuation of the property of the parties. The property of the parties consisted of household goods and appliances, a 1959 Chevrolet automobile, farm machinery, equipment, and livestock located on the father's farm in Missouri, and a $10,000 life insurance policy. Plaintiff lists these items of property on two sheets of paper, exhibit Nos. 3 and 4 and places a value on each item. Plaintiff testified that the household goods had a total valuation of $565. The parties divided this property after their separation with the plaintiff receiving property of value in the neighborhood of $200. The plaintiff testified as to the different items of farm equipment, machinery, and livestock that the defendant had in Missouri and placed a total value thereon of $5,172. This includes the 1959 Chevrolet automobile valued at $475. The court found the cash value of the life insurance policy in the sum of $750 to which there is no objection in this appeal. Despite this testimony on the part of the plaintiff, she now contends that the court should add the sum of $3,200 in the valuation of the total property because of a probable increase from the eight dairy cows and twelve sows she listed as being owned by the defendant. The testimony of the plaintiff in this respect is pure conjecture and surmise, and the record is entirely devoid of any evidence as to valuation. The plaintiff, on being asked about the existence of 45 or 50 pigs, testified, "should have been, yes." There is no evidence as to an increase from the herd of 8 dairy cows or a valuation thereof. Although the record is not free from doubt, we come to the conclusion that the total value of the

parties' property at the time of the trial was between $5,000 and $6,000. The trial court made no finding as to valuation. The record also shows that the property owned by the defendant at the time of their marriage was of the approximate valuation of $3,800.

The parties left the farm in Missouri in December 1963. The farm machinery and equipment have remained on the farm and the cost and expenses of maintaining the livestock and any evidence as to depreciation of the farm equipment and machinery do not appear in the evidence.

The factors to be considered in an award of alimony or a division of property in a divorce case are the age and health of the parties; their earning ability; their relative conduct leading up to the divorce; the duration of the marriage; the social standing of the parties; the property of the parties and its value at the time of the divorce, its income-producing capacity, the manner in which it was acquired, and the respective contributions that each party has made thereto; the property of the parties and its value at the time of the marriage; and all other relevant facts and circumstances. Workman v. Workman, *supra*; Kroger v. Kroger, 153 Neb. 265, 44 N. W. 2d 475. We point out that this is not a case where a married couple has acquired, by their joint efforts, property over a long period of time. The parties here are young; the plaintiff was 22 years of age at the time of the trial. The marriage lasted about 4 years, and the value of the property they acquired by their joint efforts was comparatively small. The income and earning capacity of the defendant are not shown in the evidence. He is farming in Missouri on a farm owned by his father. The farm machinery, equipment, and livestock are necessary for the defendant's continued operation on the farm. It appears that both parties are in good health. It does appear that the defendant's conduct was responsible for the divorce, and this conduct was over a short period of time, consisting mainly of the

use of vile language against the plaintiff but did not injuriously affect her health. It also appears that the defendant will have a financial burden in the payment of child support which may increase as the years go on. The trial court awarded $1,500 in alimony payable at the rate of $25 per month. On a review of the record in this case we consider this award just and equitable under all of the circumstances.

For the reasons given, the decree of the district court is modified to provide for an allowance for child support in the sum of $60 per month per child or a total of $120 per month. The decree in all other respects is affirmed. Costs are taxed to the defendant, including an attorney's fee in the sum of $200 in this court.

AFFIRMED AS MODIFIED.