BEVERLY A. MULFORD, APPELLANT, V. FRED A. MULFORD, APPELLEE.

320 N.W.2d 470

Filed June 4, 1982. No. 44176.

Brogan & Stafford, P.C., for appellant.

Terry C. Dougherty, Assoc., and Lynn D. Hutton, Jr., P.C., for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

CLINTON, J.

This is an action for dissolution of marriage brought in the District Court for Madison County by the wife, Beverly A. Mulford, against the appellee husband, Fred A. Mulford. The parties were married on October 26, 1975, and separated on January 17, 1980. At the time of the marriage Mrs. Mulford was a widow with two daughters, one a minor who lived at home. Mrs. Mulford was a person of substantial wealth. Mr. Mulford, previously divorced, was the father of three minor sons who were in the custody of their mother and for whom he paid child support of $250 per month. Mr. Mulford was employed as a superintendent of the Masonic Eastern Star Children's Home at Fremont, Nebraska. As a superintendent he received an annual salary of about $10,000 in addition to a residence, utilities, food, and an automobile.

Before the marriage Mrs. Mulford asked that the parties enter into an antenuptial agreement, which they did. The statements of worth contained in the agreement indicated that Mrs. Mulford had a worth of $571,000 and Mr. Mulford of $25,000. Mr. Mulford's worth consisted of an inheritance to be received from the estate of his father, which he did receive after the marriage. The antenuptial agreement contained the usual recitals and agreements by which each party waived his or her right and interest in the estate of the other upon death. In addition, it contained at paragraph 6 the following pro-

vision: "Each party, in the event of a separation or divorce, shall have no right as against the other by way of claims for support, alimony, attorney fees, costs or divisions of property." The court dissolved the marriage and awarded Mr. Mulford the personal property in his possession, consisting of an automobile and personal property, life insurance policies on his own life, and certain household goods which he had purchased for a summer home owned by Mrs. Mulford on Lewis and Clark Lake. It awarded Mrs. Mulford all the real and personal property in her own name. Mr. Mulford was directed to pay certain debts he had incurred, totaling about $3,000. He was awarded the sum of $25,000 as a property settlement and the sum of $2,000 as alimony, payable in five equal monthly installments.

Mrs. Mulford appeals from the decree to this court, contending that the property settlement and alimony award are unjustified, and, in so asserting, relies in part upon the provisions of paragraph 6 of the antenuptial agreement.

It is generally held that antenuptial agreements providing in the event of divorce or separation the spouse should forfeit his or her rights in the property of the other are contrary to public policy and void as tending to promote divorce. This court so indicated in the early cases of *Tiernan v. Tiernan,* 112 Neb. 707, 201 N.W. 145 (1924), and *White v. White,* 112 Neb. 850, 201 N.W. 662 (1924). That appears to be the majority rule. Annot., 57 A.L.R.2d 942 (1958).

The evidence shows that before the marriage Mr. Mulford told Mrs. Mulford he doubted that he should marry her because he could not contribute fully in a financial way to the marriage. Mrs. Mulford indicated that his lack of financial contribution would be no problem. After the marriage Mr. Mulford kept his job as superintendent of the Masonic children's home for 7 or 8 months and then quit that job for employment in Norfolk where the parties

lived in Mrs. Mulford's home. He remained employed through most of the marriage, earning between $8,500 and $13,000 per year. Mrs. Mulford's average annual income during the marriage was in excess of $50,000. At the time of the divorce Mr. Mulford was employed in a nursery at the minimum hourly wage. At the end of the marriage Mr. Mulford's $25,000 inheritance had dissipated while Mrs. Mulford's net worth had increased to about $750,000.

We will not recite the evidence in detail. On review de novo we find it supports the award made to the husband and, except for his employment, restores him to approximately his premarital financial condition.

AFFIRMED.