HENRY BUSEKIST, APPELLANT AND CROSS-APPELLEE, V. ANN I.
BUSEKIST, APPELLEE AND CROSS-APPELLANT.

398 N.W.2d 722

Filed January 16, 1987.  No. 85-487.

James T. Gleason of Swarr, May, Smith & Andersen, P.C., for appellant.

Bernard T. Schafersman of Yost, Schafersman, Yost, Lamme & Hillis, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Henry Busekist appeals the decree of the district court for Douglas County dissolving his marriage with Ann I. Busekist. In his appeal Henry alleges the district court erred in finding the antenuptial agreement between the parties was a binding agreement which survived the dissolution of the marriage. Henry further alleges the court erred in finding reasonable the amount of alimony awarded and in granting Ann a $10,000 mortgage on the home of Henry as a reasonable division of property. Ann cross-appeals, alleging the district court erred in not awarding her one-half the jointly owned house and in not awarding alimony payments for at least 48 months. Ann further assigns as error the district court's failure to secure the payments provided for in the antenuptial agreement and its refusal to award attorney fees and court costs. For the reasons hereinafter stated the judgment of the district court is reversed

in part and affirmed in part.

The facts preceding this matter are relatively simple. Henry Busekist and Ann Marshall were married on August 17, 1981. Henry, at the time of trial, was 80 years old and Ann was 55. Henry was retired and was a widower at the time of the marriage. Henry has heart problems, is hard of hearing, and must use a cane to walk. Ann is in good physical condition except for a painful arthritis condition requiring medication. No children were born of this union, and neither party is responsible for the welfare and support of any minor children. Henry has one adult daughter from a prior marriage.

At the time of the marriage the parties were possessed of substantially different assets. Henry's assets consisted of 400 acres of farmland, a home, savings, certificates of deposit, a car, coin collection, and antiques and other household furnishings. Ann's assets included her car, some household goods, and rights in a teachers' retirement plan.

Due to the substantial difference in assets, the parties executed an antenuptial agreement. The agreement was to define and limit the claims and demands which each of the parties might have against the estate of the other. The agreement provided that Henry would transfer the title of his principal residence to Henry and Ann as joint tenants with rights of survivorship. Furthermore, the agreement provided that in the event Henry shall predecease Ann, his estate would pay $600 per month to Ann during her lifetime. This payment was to come from the income of a trust created at the time the agreement was entered into, having as its corpus the 400 acres of farmland.

The marriage lasted for approximately 3 years before Henry filed a petition for dissolution. During this brief period of marital union, the couple experienced a shortage of income. Henry complained about excessive spending, but the financial problems continued. The marriage was dissolved by a decree of the district court for Douglas County. The decree held the antenuptial agreement to be valid and binding. Furthermore, the court granted the respondent, Ann, a mortgage to the value of $27,500 on the family residence as a result of the joint tenancy deed. This was later amended to a $10,000 mortgage.

Finally, the decree ordered alimony payments of $500 per month for 24 months to be paid to the respondent.

Petitioner's first assignment of error concerns the district court's finding that the antenuptial agreement was valid and binding. The general rule in Nebraska regarding the validity of antenuptial agreements in the event of divorce, as stated in *Sims v. Sims*, 186 Neb. 780, 186 N.W.2d 491 (1971), is that an antenuptial agreement containing no provision to the contrary is not affected by a divorce of the parties. We hold that the rule as stated in *Sims* is too broad in that it may operate to hold valid, in the event of divorce, an antenuptial agreement that is clearly to become effective only in the event of the death of a spouse simply because there is not an express provision to the contrary in the agreement. The agreement entered into between the parties in this case, when read as a whole, is clearly to be effective only as long as the marital relationship exists. The agreement neither expressly nor by reasonable implication indicates the parties wished the agreement to be effective in the event of divorce. The situation presented in *Sims* differs significantly on one important fact. In *Sims*, while there was no express provision in the agreement that the agreement should remain effective after a divorce, there was evidence adduced at trial that such was the intention of the parties. In the *Sims* case the parties had removed from the agreement, as signed, a provision that expressly voided the antenuptial agreement in the event of divorce. Such conduct was relevant evidence leading to the conclusion that the parties intended their agreement to continue in effect even after divorce.

In the present case there was testimony to the effect that the topic of divorce was never discussed as the antenuptial agreement was prepared. Such a document contemplating only the death of a spouse cannot be reasonably expected to include a provision for continued support after the marriage is dissolved by a divorce. Furthermore, in the absence of such a provision, such an agreement cannot be held to be valid and binding in the event of a divorce. Therefore, we hold that as to petitioner's first assignment of error, the district court did commit error in finding the antenuptial agreement a valid and binding agreement in light of the divorce. We hold that an

unambiguous antenuptial agreement which neither expressly nor by reasonable implication indicates an intention of the parties that it be valid upon divorce shall not be valid and binding upon the dissolution of marriage. To the extent it holds otherwise, *Sims* is overruled.

This is not to say that an antenuptial agreement may not specifically contain certain agreements between the parties to become effective in the event of a divorce between those parties. If the parties desire, they may so contract. Such a contract, however, is subject to our holding in *Mulford v. Mulford*, 211 Neb. 747, 749, 320 N.W.2d 470, 471 (1982), which states:

> It is generally held that antenuptial agreements providing in the event of divorce or separation the spouse should forfeit his or her rights in the property of the other are contrary to public policy and void as tending to promote divorce. This court so indicated in the early cases of *Tiernan v. Tiernan,* 112 Neb. 707, 201 N.W. 145 (1924), and *White v. White,* 112 Neb. 850, 201 N.W. 662 (1924).

In any event, in a divorce action the effect of an appropriate antenuptial agreement has been set out in *White v. White,* 112 Neb. 850, 853, 201 N.W. 662, 664 (1924), where we stated:

> The statute has made no exceptions in the case of an antenuptial contract, and the power is vested in the trial court to make fair and fitting award not limited by the provisions of such contract. The contract may be in evidence, among other evidence, as to the amount to be awarded, but no more.

Petitioner's last two assignments of error shall be considered together with respondent's first two assignments of error in her cross-appeal. These are concerned with the property division and the award of alimony. It is the rule in Nebraska that the division of property and the awarding of alimony in marriage dissolution cases are matters entrusted to the sound discretion of the trial judge. On appeal these matters will be reviewed de novo on the record and affirmed in the absence of an abuse of the trial judge's discretion. *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986); *Anderson v. Anderson*, 222 Neb. 212, 382 N.W.2d 620 (1986). The ultimate test in determining correctness in the amount of alimony awarded as well as the

appropriateness of the division of property is reasonableness as determined by the facts of each case. *Taylor v. Taylor, supra; Burhoop v. Burhoop,* 221 Neb. 657, 380 N.W.2d 254 (1986). An appropriate division of property must turn on reasonableness and the circumstances of each case in light of the factors set forth in Neb. Rev. Stat. § 42-365 (Reissue 1984). *Sullivan v. Sullivan,* 223 Neb. 273, 388 N.W.2d 516 (1986). These factors include duration of the marriage, history of the contributions to the marriage by each party, interruption of personal careers or educational opportunities, and the ability to engage in gainful employment. § 42-365. After a careful review of the record, we find no abuse of discretion on behalf of the trial court. The division of property, including the awarding to respondent, Ann Busekist, a lien in the form of a first mortgage in the amount of $10,000 on the family residence, as well as the award of alimony for 24 months was reasonable in light of the circumstances of this particular case.

Respondent's third assignment of error need not be considered. This assignment of error is concerned with the court's failure to secure the payments in the antenuptial agreement. This court's finding that the agreement is no longer a valid and binding document in light of the dissolution of marriage is dispositive of this issue.

Finally, respondent in her cross-appeal alleges the trial court erred in not awarding to her attorney fees and court costs. The awarding of attorney fees is a matter within the trial court's initial discretion. While it is reviewed de novo on the record, it will not be disturbed on appeal in the absence of abuse of discretion. *Meyers v. Meyers,* 222 Neb. 370, 383 N.W.2d 784 (1986); *Kocarnik v. Kocarnik,* 209 Neb. 454, 308 N.W.2d 352 (1981). In the present instance the decree of the district court ordered each party to pay his or her own attorney fee and court costs. We cannot say upon a de novo review of the record that the district court abused its discretion in not awarding respondent attorney fees. The judgment of the district court is reversed in part and affirmed in part.

AFFIRMED IN PART, AND IN PART REVERSED.

KRIVOSHA, C.J., concurs in the result.