CASES DETERMINED

IN THE

# SUPREME COURT OF NEBRASKA

## SEPTEMBER TERM, 1911.

L. A. WILSON, APPELLEE, V. ANNA J. WILSON, APPELLANT.

FILED SEPTEMBER 25, 1911.   No. 16,422.

1. **Divorce: DISMISSAL OF SUIT.** "Upon an application for a divorce, where both parties are found guilty of any of the enumerated offenses for which a divorce may be granted, the court should dismiss the bill." *Nagel v. Nagel*, 12 Mo. 53.

2. **Attorney and Client: MISCONDUCT OF ATTORNEY.** Where the wife is charged with the crime of adultery with her attorney, who is made corespondent in an action for a divorce, it is against the ethics of the legal profession for such corespondent to act as both attorney and witness for the wife. His testimony being necessary in the denial of the adultery, he should not appear in the case as counsel.

APPEAL from the district court for Gosper county: ROBERT C. ORR, JUDGE. *Reversed with directions.*

*W. G. Hastings* and *R. D. Stearns*, for appellant.

*O. E. Bozarth, W. S. Morlan* and *Ritchie & Wolff*, contra.

REESE, C. J.

This is an action by plaintiff and against defendant for a divorce on the ground of adultery. Upon a trial to the district court, the issues were found in favor of plaintiff and the divorce granted. Defendant appeals.

It is alleged in the petition that the parties were married on the 21st day of October, 1904, and that since that time plaintiff has "conducted himself toward the defendant as a kind, loving and providing husband." It is further alleged that defendant, regardless of her marital duties and obligations, on the 12th day of December, 1908, at Holdrege, Nebraska, committed adultery with one Lafe Burnett, and plaintiff has not cohabited with defendant since the discovery of such offense; that there were no children born to said marriage; that defendant had been twice married before her marriage to plaintiff; that plaintiff had not been theretofore married; that defendant is the owner of personal property to the amount of about $2,500. The prayer is for divorce and the recovery of costs. What is evidently an amended answer and cross-petition was filed by defendant, in which is admitted that defendant is the owner of personal property, but of much more value than the amount alleged in the petition; that said property is held by plaintiff, and defendant is without means with which to conduct her defense. The averment in the petition that plaintiff had conducted himself toward defendant as a kind, loving and providing husband is denied, and it is alleged that plaintiff has been guilty of extreme cruelty toward defendant by personal violence, and by fraudulently confining her in a hospital for the insane in Council Bluffs, Iowa, as well as fraudulently causing her to be imprisoned in the hospital for the insane in this state, without care, attention, concern, or inquiry on his part, from the 27th day of March, 1905, until the month of November, 1908, where she was wholly neglected by him, and after her discharge from said hospital failed and refused to contribute anything toward her support or maintenance, notwithstanding he had a large amount of her property in his possession, he well knowing of her destitute condition; that after her said discharge he had threatened to have her re-examined on a charge of insanity, and again incarcerated in said hospital. The charge of adultery is denied.

By way of cross-petition a divorce from plaintiff is demanded on the ground of extreme cruelty, and it is alleged, in substance, that at the time of the marriage, and thereafter, defendant was the owner of a large amount of property, consisting of real estate and personal property, and for the purpose of depriving defendant thereof and securing it to his own use, ownership and possession, and contriving to defraud her out of the same, he caused her to be confined in a hospital for the insane, took possession of her property, caused and procured himself to be appointed as her guardian, thereby obtaining the custody and control of her property, caused and procured a mortgage for a small amount on her real estate to be foreclosed and the land purchased for him by another, who afterward conveyed the land to him, thereby contriving and intending to defraud her of the whole thereof, and abandoned defendant, leaving her practically penniless. Descriptions of the property, real and personal, are set out in the answer and cross-petition, but for the purposes of this decision they will not be noticed here. It is alleged that she is wholly guiltless of the crime of adultery, but that the charge has been made against her in furtherance of the cruelty and designs of plaintiff.

By the reply the averments of the answer and cross-petition, not specifically admitted, are denied. The charge of adultery is reaffirmed. Her insanity is alleged as the reason for her confinement. It is averred that the real estate referred to was the property of William A. Scales, a former deceased husband of defendant, and upon his death the fee thereof descended to his child, Gladys Scales, as his sole heir. The payment to defendant of certain sums of money as temporary alimony and otherwise is alleged; prayer that the cross-petition of defendant be dismissed, and that a decree of divorce be granted as prayed in the petition. The result of the trial was as above indicated.

A number of questions are presented for decision; but, as the decision of one will control the disposition of the

case, we will consider that one alone. The trial court, believing and acting upon the theory that the cruelty alleged in the answer, and of which proof was offered, could not constitute any defense to a charge of adultery, excluded, in the main, all evidence offered in support of the cross-petition. Many objections by plaintiff to depositions and oral testimony offered by defendant were based upon the ground that "neither abandonment nor extreme cruelty is a sufficient recriminatory defense to a charge of adultery in a divorce proceeding," and which objections were sustained by the court over the exceptions of defendant. The whole record shows conclusively that this was the view of the court, and some authorities may be found supporting the doctrine, in the abstract, that cruelty may not constitute a defense; but, when considered in the light of the averments of the answer and cross-petition and evidence tendered, we doubt if a well-considered case, decided since the abandonment of the jurisdiction of the ecclesiastical courts of England over the subject of divorce, can be found sustaining the holdings of the district court in this case. We do not deem it necessary to examine or discuss the history or development of this phase of the law, but shall be content with the citation of the more modern decisions upon the subject in connection with a glance at what we conceive to be the reason for, and justice of, these more modern holdings. In the beginning, it should be noted that, if the averments of the answer and the offers of proof upon the trial are true, the case is one of extreme cruelty. Those charges may be untrue, but we have no means of knowing all the facts until the subject is fully and impartially investigated. If they are untrue, nothing could be plainer than it would be the duty of plaintiff to himself and his own reputation to throw open the door of inquiry and allow their falsity to be shown and his good name vindicated. Such seems not to have been the course pursued by him and his counsel. If they are true, he has no possible right to a divorce based upon the fact of branding

his much abused, defrauded and neglected wife as an adulteress.

Defendant was a widow living upon and managing a farm of practically half a section of land, well stocked with live stock and farm implements, holding, as we are justified in inferring, at least a life interest in the real estate, and apparently in a prosperous condition. Plaintiff married her, moved on and occupied the farm and property. If the averments and proffered evidence are true, within from two to three months after their marriage defendant was taken violently sick while at a meal at the table, and was soon thereafter sent to a hospital at Council Bluffs, and confined in an insane ward, where she remained eleven weeks. She returned to her home one day, was not invited to remain, and went to a neighbor's, where she was entertained for two or three days. Then a charge of insanity was preferred against her, and she was sent to the hospital for the insane at Lincoln, where she was confined and held, with more or less freedom, from the month of March, 1905, until November, 1908, during which time no attention or regard was paid to her by plaintiff. When we consider the testimony of Dr. Hay, who was either an assistant physician or superintendent of the hospital during the time of her confinement, and other physicians in charge, as well as those with whom defendant associated, which is preserved in the bill of exceptions (though much of it was rejected by the trial court), we are led to entertain serious doubts as to her insanity. After her discharge no attention was given her by plaintiff, except that at one time he furnished her $10, which he charged up against her estate, the property of which was then in his possession. She was thus thrown upon her own resources after her discharge from the hospital, and was compelled to earn her own living. Within four months after defendant's incarceration, plaintiff applied to the county court for letters of guardianship of the person and property of defendant, alleging her to be incompetent, and his appointment was

accordingly made, when he received and maintained charge of her personal property of the appraised value of $1,528.90. There was a mortgage of some $900 upon defendant's land, but by failure to pay either the principal or interest thereof it was allowed to go to foreclosure and sale, notwithstanding his apparent ability to pay the same out of defendant's property. At the time of the decree and sale of the land under the foreclosure proceedings, plaintiff was the guardian of defendant and her property, but he allowed the land to be sold to the wife of the attorney for plaintiff in the foreclosure suit. The decree of foreclosure was entered on the 6th day of September, 1905. We are unable to find the date of the issuance of the order of sale, but the sale occurred on the 6th day of November, 1905, showing that no stay was taken, and, to that extent at least, that no effort was made by him to protect the rights of defendant. The deed was made to the purchaser at sheriff's sale on the 5th day of February, 1906, and is signed by plaintiff as sheriff of Gosper county. On the next day (February 6, 1906) the purchaser at the sheriff's sale (her husband joining in the deed) conveyed the land to plaintiff, who, so far as is shown by this record, is now in the peaceable possession of the half section of real estate, and his wife is deprived of its enjoyment, its income and the provision it affords for her declining years. In addition to this, the allegation is made that, while plaintiff was making his home with defendant as her husband, he assaulted her and otherwise mistreated her personally. As we have said, we have no means of knowing as to the exact truth of the allegations and offers of proof, for the reason that much of the offered evidence was excluded. We find the records of the decree of foreclosure and deeds in the bill of exceptions.

If the allegations and offered proof are true, is plaintiff entitled to a decree, even if the adultery of defendant be conceded? Our answer is, most certainly not. By section 7, ch. 25, Comp. St. 1909, extreme cruelty, whether practiced by using personal violence, or by any other

means, utter desertion for the term of two years, or when the husband, being of sufficient ability to provide suitable maintenance for his wife, shall grossly or wantonly, and cruelly refuse or neglect so to do, are made distinct and separate grounds for divorce, either from the bonds of matrimony, or from bed and board. If the averments of the answer and cross-petition and offered evidence are true, any one of the causes provided by' statute would have given defendant a divorce long before any charge of adultery was preferred against her.

In 14 Cyc. 650, it is said in the text: "By the weight of authority, the offense pleaded in recrimination need not be of the same nature as the offense which defendant has committed. Any misconduct on the part of complainant which constitutes ground for divorce bars his suit, without reference to the nature of the offense of which he complains, although in some states a contrary rule prevails by statute or otherwise and the two offenses must be of the same character. Accordingly in most jurisdictions adultery may be set up in recrimination to a suit based on defendant's cruelty, defendant's desertion, or defendant's commission of an infamous crime. So cruel conduct, if made a ground of absolute divorce, may be shown in recrimination of a charge of adultery. And desertion will bar a suit based either upon an act of adultery subsequently committed by defendant, or upon defendant's cruelty"—citing many cases sustaining the different propositions suggested by the paragraph. As bearing upon the sentence that "cruel conduct, if made a ground of absolute divorce, may be shown in recrimination of a charge of adultery," the author cites *Nagel v. Nagel*, 12 Mo. 53, *Reading v. Reading* (N. J. Ch. 1886) 5 Atl. 721, *Church v. Church*, 16 R. I. 667, and *Pease v. Pease*, 72 Wis. 136, which we have examined, and they are found to fully sustain the text. In 2 Bishop, Marriage and Divorce (6th ed.) sec. 84, the question is propounded: "Where the divorce is from bed and board, as it was formerly in England for adultery and cruelty, respect-

ively, is the former English rule whereby cruelty is not a bar to the adultery suit to be followed?" The answer is: "No. The correct rule is that, where each of the married parties has committed a matrimonial offense which the law has made ground for divorce in favor of the other, so that when one asks for this remedy the other is equally entitled to the same, whether the offenses are the same or not, the court can grant the prayer of neither," etc. In section 90 the question is asked: "Will ill conduct for which the law has provided only the limited divorce bar a suit to dissolve the marriage?" The answer is: "Yes." And the reason for the rule is given by the author. Again, in section 93, the question is asked: "In any suit for dissolution, will any conduct for which the law provides the same consequence be adequate in bar, whether otherwise of the same sort or not?" The answer is: "Yes. And the reasons given in the solution of the first and second questions (heretofore quoted) show equally, and still more forcibly, this to be so also." The reasons for this rule are also given by the author with cases cited in their support. The same subject is discussed in 2 Bishop, Marriage, Divorce and Separation, ch. 11, and with the same conclusion. In section 340 it is said: "Recrimination in divorce law is the defense that the applicant has himself done what is ground for divorce either from bed and board or from the bond of matrimony. It bars the suit founded on whatever cause, whether the defendant is guilty or not." In summing up the whole matter it is said in section 365: "It is a bar to any suit to dissolve a valid marriage, or to separate the parties from bed and board, that either before or after the complained-of *delictum* transpired, the plaintiff himself did what, whether of the like offending or any other, was cause for a divorce of either sort." The subject is discussed in 9 Am. & Eng. Ency. Law (2d ed.) 816 *et seq.*, and the same rule is drawn from the authorities cited. At page 818 it is said: "The doctrine of recrimination is applicable to all the causes for divorce. The legislatures having

provided the same legal effect for each cause for divorce, the courts refuse to measure the gravity of the several causes, but hold each effectual as a bar in recrimination." It is not deemed necessary to pursue this subject further. The doctrine here stated is the acknowledged rule in nearly, if not quite, all the states of the Union.

Much is said and many cases are cited in the "Rejoinder Brief of Appellee" upon the subject of the attitude of one of the counsel for defendant, in that he is the corespondent, an important witness for defendant, and assumes principal charge of the cause of defendant on trial. We fully agree with the criticism of plaintiff's attorney. While the law does not prohibit it, the course pursued is against the ethics of the legal profession, is unseemly, and no doubt weakens defendant's case. The position should be abandoned at once, and the cause placed in the hands of proper counsel, and the one charged as corespondent withdrawn from the case. If such course be pursued, we would no doubt be provided with a better record should this case appear again before us.

The decree of the district court is reversed, and the cause is remanded, with directions to retry the case upon the issues presented, and if both parties be found guilty of such conduct as, under the statute, would entitle each to a divorce, that the petition and cross-petition be each dismissed.

REVERSED.

ROOT, J.

I concur in that part of the majority opinion holding that the plaintiff should not be divorced if he has been guilty of conduct which in itself entitles the defendant to a divorce, but I dissent from that part of the opinion which questions the sufficiency of the evidence to sustain a finding that the defendant was guilty of adultery, and dissent from the part of the judgment directing a retrial of that issue.

There is not sufficient proof in the record to sustain

any of the defendant's allegations of cruel treatment. Possibly, if the evidence excluded by the district court had been received, the result would have been otherwise. The defendant did not file a motion for a new trial, nor assign as error the exclusion of that evidence, but has appealed to this court upon the evidence received.

Applying the ordinary rules of practice to this case, it should be determined upon the record presented by the appellant; but, since there may be some reason to believe that she would have made proof of facts sufficient to defeat the plaintiff's cause of action, I concur with the majority of the court in saying she should be given that opportunity. Nothing, however, can be gained by a retrial of the charge of adultery. The evidence is convincing on that score. It was sufficient to convince beyond all reasonable doubt the two juries which tried the defendant's paramour, and his conviction was affirmed by this court. The proof is satisfactory that the defendant and her paramour were registered at a Holdrege hotel under fictitious names as husband and wife; that in the defendant's presence her companion stated to the hotel clerk, "We might just as well get a room and go to bed right;" that about two hours thereafter the officers of the law gained access to this room and discovered the corespondent engaged in putting on his trousers, while the defendant was in bed attired solely in a *robe de nuit* and an abbreviated undergarment. The bed gave every evidence of having been occupied by two persons, and the defendant defiantly stated to the officers that they would have done as her companion had if given the opportunity. The defendant's paramour exclaimed at the time that nothing would save him from the penitentiary.

There is also other evidence in the record tending strongly to convince the impartial mind that the defendant had broken her marital vows. The defendant does not say that she can produce any other competent evidence to sustain her denial, and to the writer it seems an uncalled for waste of time to retry the issue.

The cause should be reversed, with directions to hear evidence upon the defendant's charges of extreme cruelty, and, if found true, the petition and the cross-petition should be dismissed, otherwise a decree of divorce should be rendered in the plaintiff's favor.