CORDELIA PEYTON, APPELLEE, v. LACEY E. PEYTON, APPELLANT.

FILED JANUARY 29, 1915. No. 17,937.

1. **Divorce:** CULPABILITY OF PLAINTIFF. A court of equity will not grant a divorce to one whose conduct has been such as to furnish sufficient grounds for divorce, even if the conduct of the other

party has been grossly more culpable. In such case the court will deny relief to either.

2. ——: APPEAL: CONFLICTING EVIDENCE. In such action, if the evidence is principally oral and is conflicting, and the determination of the issues depends upon the reliability of the respective witnesses, the conclusion of the trial court as to such reliability will be carefully regarded by this court upon review of the evidence.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Affirmed.*

*Brome & Brome,* for appellant.

*John M. Macfarland* and *Lambert, Shotwell & Shotwell,* contra.

SEDGWICK, J.

The plaintiff began an action in the district court for Douglas county against the defendant, and afterwards filed an "amended petition" therein. The original pleadings are not contained in the transcript. In this supplementary petition she asked for a divorce from the defendant, and alimony, principally upon the ground of cruelty. The defendant filed an answer and cross-petition asking for a divorce from the plaintiff. Upon the trial the court found that neither party was entitled to any equitable relief, and that the plaintiff was without means of support, and dismissed the action, judging the costs against the defendant. The defendant has appealed.

In his cross-petition the defendant alleged that the plaintiff and defendant were married on the 25th day of July, 1905, and that they have no children; that the plaintiff was addicted to the excessive use of intoxicating liquors and was frequently intoxicated and in drunken condition; and "that, by reason of plaintiff's conduct in this behalf and her frequent unexplained absences from her home, controversy arose between plaintiff and defendant, and defendant remonstrated with plaintiff, and sought to persuade her to abandon and cease her conduct and habits in this respect, but without success; * * * that thereafter, and on about the 1st day of June, 1911, and at various

times thereafter, plaintiff proposed to defendant that she would cease the use of intoxicating liquors and conduct herself properly in the future if defendant would resume marital relations with her, and thereupon defendant, relying upon the promises and protestations of plaintiff, was induced to and did resume marital relations with plaintiff, returned to his home at number 315 Park avenue in the city of Omaha, and plaintiff and defendant there resided together as husband and wife until the 15th day of January, 1912; that plaintiff did not cease the excessive use of intoxicating liquors, and was frequently absent from her home without any cause or reason therefor, and frequently returned in an intoxicated and drunken condition." He then alleged that the plaintiff had been guilty of adultery with different men, specifying several instances of the commission of that crime by her. He asked for an absolute divorce. There seems to be no doubt that the allegations against the plaintiff are sufficiently proved to justify the findings of the trial court that she was not entitled to any relief in a court of equity.

The defendant insists that the charges which she has made against him are not sustained by the evidence. A large amount of evidence was taken. It is contained in something over 800 sheets of type-written matter. It is very conflicting and we cannot attempt to give anything like an analysis of it. It appears without substantial conflict that, while the plaintiff was living with a former husband, she and this defendant were frequently together. Their relations were very intimate, and at about the time that she obtained her divorce from her former husband the plaintiff and this defendant began secretly living together as husband and wife, and so continued for several years before their marriage.

Counsel for defendant insists that this conduct of the parties before their marriage ought not to be counted against the defendant in this case. If his general conduct and his treatment of his wife since their marriage have been in all respects exemplary, this suggestion would be entitled to consideration. Their former sinful conduct

illustrates their character, and might furnish a basis for their mutual jealousies and brutal quarrels which continued during the most, if not all, of their married life. There is no doubt under this evidence that they habitually used personal violence against each other and the grossest kind of vituperative language. The plaintiff testified that he frequently beat her with great violence. On many occasions, she says, he knocked her down, choked and otherwise abused her. He admits using violence, but says that it was upon occasions when she was intoxicated, and was for the purpose of restraining her from doing violence against him. He admits that on one occasion he struck her a severe blow in the mouth, but says they were quarreling, that he was trying to restrain her, and the blow was with the back of his hand and was accidental. She frequently accused him of infidelity with the young woman who was working for her. She testifies to many admissions of his in that regard, and also admissions of the girl, which they deny. She does not testify to any circumstances indicating such a crime or indicating any disposition to commit it. In one of these quarrels in the presence of their family physician she accused him vigorously, and the plaintiff and the physician both testify that the defendant admitted his infidelity with the girl. He denies having made such an admission, but says that his wife so often accused him that on this occasion he may have said: "Well, let it go at that." If we consider the admitted circumstances as the evidence of the plaintiff and her daughter would characterize them, the defendant's conduct was grossly and unreasonably violent and abusive, and in many respects wholly improper. In the light of the defendant's testimony, when we consider the wholly abandoned character and conduct of the plaintiff, the defendant's exhibition of temper and violence might possibly be excusable. The trial court appears to have given the evidence the most conscientious and careful consideration. The evidence is mostly the oral testimony of witnesses in open court. These witnesses radically disagree as to the character of the various actions described. It is impossible to tell how to understand these

witnesses and determine the disposition of the defendant and the character and motives of his conduct toward the plaintiff during the latter part of their living together as husband and wife. The trial court saw these witnesses and heard their testimony. He frequently questioned the parties themselves, with the evident purpose of ascertaining their disposition toward each other, and the nature of the conduct of defendant toward his wife, making full use of the advantages he had for determining the truth of their testimony and the proper construction to be given it—advantages which this court does not possess. He has found that under all the circumstances the defendant is not entitled to the relief he asks. We cannot with any satisfactory degree of certainty come to a different conclusion.

The judgment of the district court is

AFFIRMED.

MORRISSEY, C. J., and LETTON, J., not sitting.