LEONA SPENCER, APPELLANT, V. WILLIAM CLAYTON SPENCER, APPELLEE.

64 N. W. 2d 348

Filed May 7, 1954. No. 33503.

*Miles N. Lee,* for appellant.

*Evans & Evans* and *William C. Heelan,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action for divorce by Leona Spencer, plaintiff and appellant, against William Clayton Spencer, defendant and appellee. A trial was had to the court at the conclusion of which a decree was entered denying the divorce. A motion for new trial was filed which was overruled. From the decree and the order overruling the motion for new trial the plaintiff has appealed.

The parties were married on December 24, 1940, and lived together as man and wife until June 25, 1952, when the plaintiff left the home of defendant. Three children were born of the marriage. Their names are and their ages at the time of the separation were Sally, age 10, Betty Lou, age 9, and John, age 8.

As grounds for divorce the plaintiff charged that the defendant had been guilty of extreme cruelty toward her and that he was an habitual drunkard. The court found by its decree that the charges had not been sustained.

As grounds for reversal the plaintiff assigns numerous errors but basically the grounds for reversal are that the charges were fully and amply sustained and that the court erroneously found otherwise. This therefore calls upon this court to try the issues of fact de novo and to reach an independent conclusion as to what findings are required under the pleadings and evidence without regard to the conclusion reached by the district court. § 25-1925, R. R. S. 1943; McNamee v. McNamee, 154 Neb. 212, 47 N. W. 2d 383; Cain v. Killian, 156 Neb. 132, 54 N. W. 2d 368; Budde v. Anderson, 156 Neb. 812, 58 N. W. 2d 204; Mason v. Mason, 157 Neb. 279, 59 N. W. 2d 365.

To review in this opinion the evidence adduced at the

hearing on the charges made could serve no useful purpose. It appears sufficient to say that it has been conclusively shown that the defendant has been an habitual and at least occasionally excessive user of intoxicating liquors for many years. The plaintiff charged and testified in substance that in the late period before the separation the excess became so great and so continuous that a continuance of the marriage relation became intolerable. Her evidence in this respect received substantial corroboration by witnesses on her behalf. At least by inference substantial corroboration flowed also from the testimony of the defendant's witnesses.

While the defendant denied that he was an habitual drunkard he did not deny that he habitually used intoxicating liquors and at times to excess. He sought to excuse his conduct on the ground that his habits were known to plaintiff before the marriage and that on account thereof she was estopped to make complaint, and also that plaintiff was addicted to the use of intoxicants and supplied them to defendant.

As to plaintiff's use of intoxicants there is no evidence of any occasion when plaintiff took more than two drinks. As to furnishing liquor to defendant the reasonable conclusion is that she did nothing more than to comply with defendant's demands.

On the strict charge of cruelty there was evidence of conduct in connection with drinking which if true ought to be regarded as too offensive to be endured. Also there was evidence of two shooting episodes. One of these took place before and one after the separation. Both were before the court under the pleadings as a basis of the charge of cruelty. As to the first the defendant denied that the shooting had any relation to plaintiff. His explanation was that he was only trying to shoot the legs off a beetle. As to the second he gave no testimony whatever. Moreover when plaintiff's attorney sought on cross-examination to inquire into the second incident objection was made on the ground that the mat-

ter had not been inquired into on direct examination, which objection was sustained.

Whether or not the evidence of plaintiff if accepted as true places the defendant within the category of habitual drunkard we think we do not need to decide. The evidence in all of its aspects taken together however is clearly sufficient to sustain plaintiff's charge of cruelty.

It is a well-established rule of law that any unjustifiable conduct on the part of a husband or wife which utterly destroys the legitimate ends and objects of matrimony may constitute extreme cruelty. See, Myers v. Myers, 88 Neb. 656, 130 N. W. 254; Green v. Green, 148 Neb. 19, 26 N. W. 2d 299; Kroger v. Kroger, 153 Neb. 265, 44 N. W. 2d 475.

The defendant substantially asserts that plaintiff has been guilty of conduct the effect of which would be to defeat any right to obtain a divorce from the defendant.

There is evidence of two slight indiscretions on her part neither of which was anything more than bare indiscretion even if the evidence be accepted as true. Neither is corroborated. Moreover when the facts and circumstances are considered it must be said that plaintiff's denials of this testimony and that of her witnesses is entitled to more weight than that of her accusers.

Taking into consideration all of the evidence and considering it as this court must, de novo, the conclusion is that the plaintiff has sufficiently proved her charge of extreme cruelty against the defendant and that the district court erred in refusing to grant her a divorce from the defendant.

There are numerous errors assigned other than the basic one considered and while it may well be said that at least some of them have merit, in the light of the conclusion reached, it does not become necessary to consider them.

The next question for consideration is that of alimony, child support, costs, and attorney's fees.

The following is the general rule to be followed in

the determination of alimony and division of property: "In determining the question of alimony or division of property as between the parties the court will consider the respective ages of the parties to the marriage; their earning ability; the duration of the marriage; the conduct of each party during the marriage; their station in life, including the social standing, comforts, and luxuries of life which the wife would probably have enjoyed; the circumstances and necessities of each; their health and physical condition; and their financial circumstances as shown by the property they owned at the time of divorce, its value at that time, its income-producing capacity, if any, whether accumulated or acquired before or after the marriage, the manner in which it was acquired, and the contributions each has made thereto. From these elements and all other relevant facts and circumstances, the court will determine the rights of the parties and make an award that is equitable and just." Strasser v. Strasser, 153 Neb. 288, 44 N. W. 2d 508. See, also, Kroger v. Kroger, *supra;* Prosser v. Prosser, 156 Neb. 629, 57 N. W. 2d 173.

In 1940 when the parties were married plaintiff was 24 years of age and the defendant 41. There is no evidence as to the present earning ability of the plaintiff except that before the marriage she worked in a restaurant. In view of the fact that there are three children to care for her ability in this respect must be regarded as very limited. The earning ability of defendant depends upon proper management of his business as a rancher and on future economic prospects. His ranch holdings are a one-half interest in slightly less than 13,000 acres of deeded lands, a lease on 160 acres of school lands, and a lease on 40 acres of government lands.

The total value of the ranch property is not accurately ascertainable. There is a variation in the estimates fixed by witnesses which extends from $175,000 to $440,000. We think however that it may be said that it is reasonably of at least the value of $300,000 and that

defendant's interest is reasonably of the value of $150,000.

Like the value of the ranch property the value of the cattle is in dispute. We think however that it is safe to say that at the time of trial they had at least the value of $65,000.

From the ranch property and the handling of cattle thereon flows the income of the defendant. What that will be is of course speculative. It is all the more speculative since there is no break-down of past gross income so that a reasonably accurate conclusion may be reached as to the past net income. There is evidence as to bank deposits but whether or not these deposits represent the entire gross income does not appear.

Ranching operations were carried on by defendant with his brother for a long period of years until October 1951. For the last ten years of this partnership operation the average deposits of gross income amounted to a little more than $30,000 a year. The yearly variation was from a low of a little more than $16,000 to a high of a little more than $64,000. The deposits for the year 1951 were a little more than $23,000.

What the expense of operation was cannot be even fairly ascertained. Labor and feed costs were probably at the minimum since hay probably sufficient for feeding purposes was produced on the ranch property. This appears to be true since for at least a part of the time hay was cut and handled without cash outlay, the cost of handling being paid for by a share of the hay.

The income over the years must have been considerable since the ranch property appears to be unencumbered and at the time of trial the defendant apparently had government bonds of the cost of $25,360, cash in the amount of $11,505.66, and money due him in the amount of $6,691.10. Also when plaintiff left the defendant she took from their joint account $8,000.

The record discloses that some of the present holdings came to defendant by inheritance and some by his own efforts and of course some by the appreciation of values

over the years but no reliable information has been given as to the values flowing from these respective sources. Likewise there is no reliable information as to the value added after the marriage of the parties.

It may be said however that it is reasonably inferable that since the marriage and up to the date of separation the plaintiff gave all of her efforts in furtherance of the welfare of her husband's interests. There is no evidence to the contrary.

The station and social standing of the parties was that of the sandhill rancher. What are regarded as modern conveniences were few. In separation the physical and social environment of plaintiff probably is and will be superior to what she enjoyed on the ranch. Apparently the health of plaintiff is good. The defendant appears to suffer some physical disability.

Having taken into consideration all of the facts and circumstances as disclosed by the record and having considered them in the light of the rule hereinbefore set forth for the determination of alimony and division of property we conclude that there should be an award in favor of plaintiff in the amount of $75,000, payable $15,-000 within 60 days from the date of issuance of mandate herein and $6,000 annually thereafter until the full sum of $75,000 shall have been paid.

As to the minor children of the parties it is concluded that the plaintiff should have the care, custody, and control of them subject to the right of visitation by the defendant at reasonable times and that the defendant pay to plaintiff $200 a month for the support of the children. The provision as to custody and support of children shall remain in force until the children shall become of age or self-supporting or until the further order of the court.

In addition to what has been allowed by the district court the defendant shall pay to plaintiff $6,000 as fees for her attorney.

The decree of the district court is reversed and the

cause is remanded with directions to the district court to enter a decree granting a divorce to the plaintiff and to award alimony, custody of and support for children, and attorney's fees as indicated by this opinion. Costs are taxed to defendant.

REVERSED AND REMANDED WITH DIRECTIONS.