DOROTHY R. BAKER, APPELLANT, v. ROBERT F. BAKER, APPELLEE.

89 N. W. 2d 35

Filed March 28, 1958. No. 34316.

*Stewart & Stewart,* for appellant.

*Wagener, Marx & Galter* and *Lee & Huston,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, and BOSLAUGH, JJ.

CARTER, J.

Plaintiff, Dorothy R. Baker, brought suit for divorce against the defendant, Robert F. Baker. The defendant denied generally the petition of the plaintiff and filed a cross-petition praying that a divorce be granted to him. The trial court denied plaintiff's petition and granted a

divorce to the defendant on his cross-petition. The custody of the three minor children was granted to the defendant. A division of the property owned by the parties was made and alimony was denied. From the decree so providing, the plaintiff has appealed.

The evidence shows that the parties were married on June 2, 1946. Three children were born to the marriage: Lesley Jean, a daughter 9 years old, Randall Fred, a son 5 years old, and Robin Rae, a daughter 4 years old. The plaintiff alleged nonsupport and cruelty as grounds for divorce. In his cross-petition the defendant charged the plaintiff with numerous clandestine relations with other men, including adultery, as grounds for divorce. It was upon these issues that the case was tried.

The parties resided in Broken Bow, Nebraska, following their marriage. Defendant was engaged in the business of photography. In May 1955, they sold their home and business and purchased a resort in Minnesota. The venture was not a success and they returned to Broken Bow in October 1955. Being in financial distress they moved in with plaintiff's parents. Each sought and obtained employment. Plaintiff worked in Broken Bow and defendant in Des Moines during the times important here. By an arrangement between themselves each was to make payments on specified obligations of the parties. The defendant did so to the full extent of his means. The relationship of the parties appears to have been very harmonious until April 28, 1956, when plaintiff wrote the defendant that she would not live with him again. The charge of nonsupport is not sustained by the record, the funds earned by the defendant having been expended in accordance with the mutual understanding of the parties. The allegations of cruelty are not sustained by the evidence, but even if they were, the evidence shows a condonation of the acts of the defendant alleged to constitute cruelty.

The evidence is sufficient to sustain the granting of a divorce to the defendant. The record shows that plain-

tiff was drinking intoxicating liquor to excess. She engaged in many indiscretions with other men, particularly with one man named in the record. They are established by the evidence of several reliable witnesses. While there were no eyewitnesses to any act of adultery, a court would be naive, indeed, if it did not conclude from the evidence in the record that plaintiff was guilty of that offense against the marriage relation. A recitation of the lurid facts recited in evidence would serve no useful purpose in this opinion. The trial court found the plaintiff guilty of adultery. No other conclusion could properly have been reached from the evidence in this record.

Under the foregoing findings plaintiff is not entitled to alimony. She has as a matter of fact proclaimed her unfitness to have the care and custody of the minor children of the marriage. Their care and custody was properly granted to the defendant. The trial court made a division of the property between the parties which was in all respects proper and to which no complaint appears to have been made. The case falls within the rules announced in Speck v. Speck, 164 Neb. 506, 82 N. W. 2d 540, and Yost v. Yost, 161 Neb. 164, 72 N. W. 2d 689, in the form in which they have been reannounced in this opinion.

The decree of divorce is in all respects correct and it is affirmed. The costs in this court are taxed to the plaintiff.

AFFIRMED.

YEAGER and WENKE, JJ., participating on briefs.

SIMMONS, C. J., dissenting.

This case presents a quite unusual situation and calls for the exercise of a quite unusual remedy.

Plaintiff sued defendant for divorce on the ground of cruelty.

Defendant denied generally and by cross-petition sought a divorce on the grounds of cruelty and adultery.

The unusual situation to which I refer arises as a result of these facts.

On October 28, 1955, there was filed our opinion in Yost v. Yost, 161 Neb. 164, 72 N. W. 2d 689, where (quoting from the syllabus) we stated these three rules:

"9. Where a wife is conclusively found to be occupying an adulterous relationship with a man not her husband, she is an unfit person as a matter of law to have the care and custody of her minor children as against the husband she has wronged.

"10. Where in a suit for divorce adultery on the part of the defendant is conclusively proved, the trial court is required to grant a divorce to the plaintiff on that ground.

"11. Where adultery of a wife is established, she is not entitled to an award of alimony or attorneys' fees. The costs of the action in such a case are taxable to the wife."

Yost v. Yost, *supra*, stated the rules to guide the trial court when this case was decided. Defendant cites it as controlling authority here.

The court now modifies syllabus point 10 in the Yost case and states the rule as follows:

"1. Where the evidence in a divorce action establishes adultery on the part of one of the parties thereto, the court is required to grant the prayer of the other party seeking a divorce on that ground unless prevented from doing so by applicable statutory provisions."

As I see it the rule as modified contains error. I shall return to that later herein.

The court now modifies syllabus point 9 of the Yost case and states the rule as follows:

"2. Where a wife is found to be guilty of adultery she is ordinarily an unfit person to have the care and custody of her minor children as against the husband she has wronged."

This makes the rule conform generally with our holding in Meredith v. Meredith, 148 Neb. 845, 29 N. W. 2d

643, wherein we held that a mother, guilty of adultery, should have possession of her child of tender years. The children here are of tender years. The claimed unfitness of the plaintiff arises solely because of the "indiscretions" and an act of "adultery" (as in the Meredith case) of which she is found guilty.

The court now modifies syllabus point 11 of the Yost case and states the rule as follows:

"3. Where adultery by a wife is established, she is not entitled to an award of alimony and ordinarily will not be allowed an attorney's fee or an award of costs."

It will thus be seen that the rules of law applicable to this case have been changed materially since the trial and decision in the district court. The amelioration of the rigors of the rules is favorable to the plaintiff. The court has no way of knowing what the judgment of the trial court would have been had it heard and decided this case under the rules now announced—and yet its decision on every matter is affirmed.

I now return to syllabus point 1 of the court in the instant case. The rule as stated is that where adultery is established the court "is required" to grant a divorce "unless prevented from doing so by applicable statutory provisions." My objection goes to the two quoted matters.

"Required" is a mandatory word meaning commanded. There is no command in the statute. Section 42-301, R. R. S. 1943, provides that a divorce "may be decreed" for any one of seven reasons, one of which is adultery. The permissive "may" is used also in sections 42-302 and 42-302.01, R. R. S. 1943. Neither reason nor authority is given for changing the statutory discretionary rule to a mandatory rule denying all discretion to the trial court save as permitted by the exception. It may be pointed out that the Legislature used the mandatory "shall" in section 42-304, R. R. S. 1943, to which I refer presently.

The exception is "unless prevented from doing so by

applicable statutory provisions." The exception is an improvement over the all-inclusive mandatory rule as stated in syllabus 10 of the Yost case above quoted. As a statutory provision it permits the court to deny a divorce where adultery is established and (1) where procurement or connivance of the complaining party is shown; (2) where there has been forgiveness or condonation; or (3) where there has been knowledge of the adultery for 5 years before suit is brought. § 42-336, R. R. S. 1943. It permits a trial court to obey the mandatory "no divorce shall be decreed" of section 42-304, R. R. S. 1943.

The rule as now stated permits a trial court to recognize the recrimination rule "where the party complaining shall be guilty of the same crime or misconduct charged against the respondent." § 42-304, R. R. S. 1943. It excludes all other application of the recrimination rule.

However, independent of statute, this court has long recognized the recrimination rule and that it was not limited to offenses of the same nature, and specifically holding that extreme cruelty may be shown in recrimination of a charge of adultery. See Wilson v. Wilson, 89 Neb. 749, 132 N. W. 401; or as put in Wilson v. Wilson, 93 Neb. 182, 139 N. W. 1043, extreme cruelty is a defense to adultery. See, also, Peyton v. Peyton, 97 Neb. 663, 151 N. W. 150, where a husband guilty of extreme cruelty was denied a divorce from a wife guilty of adultery who was described in the opinion as a "wholly abandoned character." See, also, Egbert v. Egbert, 149 Neb. 227, 30 N. W. 2d 669, where these rules were quoted and approved.

I see no reason for overruling the recrimination rule save as it is provided for in a limited way in section 42-304, R. R. S. 1943. The rule, as now stated by the court in this case, has that effect. However, if that is to be done, it should affirmatively so appear in order that the

bench and bar of the state may know, understand, and follow the law.

The rule as now stated denies the plaintiff the right to prove cruelty as a defense to adultery although all of our decisions, excepting the Yost case and this one, accord that right to a party.

I refer now to syllabus point 3 of the present opinion. As stated in the Yost opinion, adultery on the part of the wife barred both alimony and attorneys' fees, and costs. Acting when that rule of law was in force, the trial court denied alimony, attorneys' fees, and costs to the plaintiff. Concededly as now stated, the trial court has a discretion in the matter of attorneys' fees, although section 42-318, R. R. S. 1943, bars alimony where adultery of the wife is established. Ordinarily attorneys' fees are allowed a wife even though she is unsuccessful in the litigation. Here they were denied by the trial court in obedience to the rule as stated in the Yost case. Here the court affirms, although the mandatory rule is relaxed. The question comes: What would the trial court have done had the rule been correctly stated?

Here, contrary to our usual practice, all the costs are charged to the wife, although that was done in the now modified Yost opinion.

The court says that the acts of cruelty charged by the plaintiff "are not sustained by the evidence, but even if they were" they are condoned. I submit that condonation has a part in this opinion only if cruelty is established. We should be able to make up our minds which it is. The evidence establishes cruelty of the defendant. There are two corroborated incidents of physical assault by the defendant against the wife, made in public places when angry and in the presence of mutual friends. There is other corroborated evidence of the "acts of the defendant" constituting cruelty. Defendant did not deny them, and in part admitted them.

The court holds "plaintiff was drinking intoxicating liquor to excess." The record shows it was largely done

in companionship with defendant at places where he took her, and among people with whom defendant caused her to associate. That defendant was also drinking intoxicating liquor to excess is shown by his own witnesses as well as those of the plaintiff. The plaintiff's use of intoxicants is held against her. The defendants like use is not mentioned by the court. We had a similar situation in Cowan v. Cowan, 160 Neb. 74, 69 N. W. 2d 300, where we arrived at a different result.

Section 42-304, R. R. S. 1943, bars relief to the defendant on the ground of cruelty because he is guilty of the same offense.

If there was condonation by the plaintiff, there was likewise condonation by the defendant, for the claimed condonation rests on cohabitation. So if plaintiff is barred from a divorce, the same rules bar a divorce to the defendant. Divorce laws should not be partial to husbands in these matters.

The cruelty and liquor above referred to did not wreck this marriage.

So far as the plaintiff was concerned the bale of hay that broke the camel's back was the things said by the defendant about the plaintiff and their son and defendant's totally ignoring the plaintiff with reference to the son's care. That manifest cruelty was not condoned. However, under the rule as stated in the Yost case the only decision for the court, assuming adultery to have been proven, was the mandatory duty to grant the defendant a divorce, deny the custody of the children to the plaintiff, deny plaintiff alimony and attorneys' fees, and tax all costs to her!

The question is: Was adultery of the plaintiff proven?

According to this record, plaintiff engaged in indiscretions with one man not her husband. That testimony is corroborated by a detective and others partial to defendant, and goes to just what the word indiscretions signified, and no more. The wife of this third party testified as a witness for the plaintiff.

. Did the trial court consider this evidence sufficient to establish adultery? We have no way of knowing—and that because of other evidence that was admitted. I now refer to the "lurid facts recited in evidence," as stated by the court.

The defendant produced a witness who prefaced his testimony by an assertion of his own uprightness. He knew his subject matter. He testified voluntarily to help his friend, the defendant. He testified to the "lurid facts" of one act of sodomy which he stated the plaintiff performed with him. This witness testified to things told him by plaintiff at that time regarding things done in her employment in Nebraska. It is clear from the testimony of both plaintiff and defendant that the employment had not then occurred. This admitted sodomist is the man who testified plaintiff was not fit to have the custody of her children.

What effect did that story have on the trial court? We have no way of knowing. Obviously it would be difficult to get a witness who would testify as an eyewitness to an act of sodomy. However, there are witnesses, including the defendant, who could have testified about the events immediately preceding the alleged act. They were not called. There is, then, no corroboration whatever of this "lurid" story.

Even if proven, does it establish adultery as a matter of law? Here there appears to be no dispute. The answer is that it does not. Sodomy is defined in section 28-919, R. R. S. 1943. Our statutes classify sodomy under "Crimes against nature." In one way or another it is so classified by the text writers. The decisions all agree that sodomy is not adultery. All agree that it may constitute cruelty. I cite the only decisions and texts I have been able to find: Anonymous, 2 Ohio N. P. Reports 342; Crutcher v. Crutcher, 86 Miss. 231, 38 S. 337; Poler v. Poler, 32 Wash. 400, 73 P. 372; Cohen v. Cohen, 200 Misc. 19, 103 N. Y. S. 2d 426; Keezer, Marriage and Divorce (3d ed.), § 487, p. 525; Schouler Di-

vorce Manual, § 90, p. 119; 27 C. J. S., Divorce, § 28, p. 559; 17 Am. Jur., Divorce and Separation, § 83, p. 308.

I submit, then, that the finding in the court's opinion that the plaintiff was guilty of adultery, based as we must assume it was on the testimony as to sodomy, cannot be sustained as a matter of fact because it was in nowise corroborated. It cannot be sustained as a matter of law because the act testified to constituted the offense of sodomy and not adultery.

Further, although it may be cruelty, the defendant here did not know of the alleged sodomy until after this divorce proceeding began. It in nowise contributed to the separation of the parties and the breakup of this marriage.

But cruelty or not, sodomy is not adultery and the whole base of the court's opinion is accordingly erroneous.

It is quite apparent that counsel considered the evidence of sodomy as going to the issue of adultery. They so present it here. There is no indication that the trial court was otherwise advised. Obviously, also, this court has not put aside the "lurid" story of the sodomy.

I would further correct the errors in what is syllabus point 1 of the court in this opinion.

The unusual remedy I invoke would be to reverse the judgment of the trial court and remand this cause for a new trial under the rules of law now held applicable so that the trial court may weigh the evidence in the light of hearing the witnesses testify, make full use of the advantages it has for determining the truth of the testimony, and the proper construction to be given to it— "advantages which this court does not possess." Peyton v. Peyton, *supra*. The plaintiff has not had the trial in district court under proper rules of law that our system grants to her.

On trial de novo here, after such a hearing, we can act with a far better understanding of the case if we have

the trial court's determination of the issues presented based on the evidence and the law.

We are entitled to know whether the trial court received the evidence of sodomy as proof of adultery; whether it viewed the "indiscretions" as proof of adultery; whether it considered cruelty or intoxication a moving cause for divorce; whether it would accord the plaintiff alimony; whether it would accord her the custody of her young children; and whether it would award her costs and attorneys' fees under the rules now announced.

I readily concede that we have the power to decide the issues on this record. But the whole theory of trial de novo here involves the element of our having the benefit of the judgment of the trial court. The parties are entitled to have that sort of a judgment here.

It is denied in this case because it is manifest that the trial court decided issues based on erroneous rules of law as stated by this court and likewise considered evidence as proof of adultery when it does not have that effect.

WENKE, J., concurring.

While I agree with the majority opinion and think it correctly reflects the conclusions of fact to be drawn from the evidence adduced, considering the principles of law applicable thereto, however, because I feel the dissenting opinion comes to erroneous conclusions as to certain principles of law involved and fails to properly and sufficiently set out the conduct of appellant as it relates to the charge of adultery made against her, I deem it desirable to express my views in regard thereto.

The author of the dissent comes to the conclusion that syllabus point No. 1 of the opinion overrules the law relating to recrimination originally announced by this court in Wilson v. Wilson, 89 Neb. 749, 132 N. W. 401, and followed as recently as Egbert v. Egbert, 149 Neb. 227, 30 N. W. 2d 669. The rule is as follows: " 'Upon an application for a divorce, where both parties

are found guilty of any of the enumerated offenses for which a divorce may be granted, the court should dismiss the bill.'"

Syllabus point No. 1 of the opinion is as follows: "Where the evidence in a divorce action establishes adultery on the part of one of the parties thereto, the court is required to grant the prayer of the other party seeking a divorce on that ground *unless prevented from doing so by applicable statutory provisions.*" (Emphasis mine.) The language emphasized is the part of this syllabus point which the author of the dissent contends has that effect. In order to understand to what our holding in Wilson v. Wilson, *supra,* must necessarily have application, the jurisdiction and authority of the district court in divorce proceedings, and this court on appeal, should be understood. That jurisdiction and authority are set forth in Harrington v. Grieser, 154 Neb. 685, 48 N. W. 2d 753, as follows:

"Jurisdiction of the court in matters relating to divorce and alimony is given by the statute *and every power exercised by the court with reference thereto must look for its source in the statute or it does not exist.*

"Courts of general jurisdiction have the inherent power to do all things necessary for the proper administration of justice and equity *within the scope of their jurisdiction.*" (Emphasis mine.)

The jurisdiction of the district court to deny a divorce on the ground of recrimination is given to it by section 42-304, R. R. S. 1943, which provides, insofar as here material, that: "No divorce shall be decreed in any case * * * where the party complaining shall be guilty of the same crime or misconduct charged against the respondent." This has always been the law of the state. See R. S. 1866, Pt. I, c. 16, § 9, p. 129. Consequently our holding in Wilson v. Wilson, *supra,* must, of necessity, be related thereto and be a construction thereof because that is the basis and scope of our jurisdiction to deal therewith. In view thereof the doctrine

therein announced has not, in my opinion, been either overruled or modified.

The author of the dissent seems to be of the opinion that this rather simple divorce case presents such an unusual situation that it calls for the exercise of an unusual remedy, that is, to send it back to the district court for a new trial. This idea is apparently based on the fact that since we have herein modified certain rules relating to divorce that the trial court should be given an opportunity to decide this case in view thereof.

It is elementary, as stated in Stratbucker v. Junge, 153 Neb. 885, 46 N. W. 2d 486, that: "A wrong reason for a correct conclusion does not militate against the decision." The record discloses that the trial court did not exclude any competent, material evidence and, it is also apparent, that both parties were given the opportunity to, and did, fully present their side of the case. Section 25-1925, R. R. S. 1943, provides that it is the duty of this court, on appeal in equity cases, "to retry the issue or issues of fact involved" de novo and "reach an independent" decision based thereon. As stated in Spencer v. Spencer, 158 Neb. 629, 64 N. W. 2d 348: "In an action in equity this court is required to try the issues de novo and to reach an independent conclusion as to what findings are required under the pleadings and evidence without regard to the conclusions reached by the district court." This statute applies to divorce actions. See Spencer v. Spencer, *supra*.

Under this principle it seems to me that all the author of the dissent speaks of as being the basis for his recommending a new trial are things we could and should consider in this case under the foregoing statutory duty. In fact, the majority opinion has applied the rules herein announced to the evidence adduced by the parties. That is all a new trial could accomplish except to delay the ultimate decision, which is something we should not foster.

We come then to the issue of adultery. The dissent

seems to leave the impression that our finding the appellant guilty of adultery is erroneous because it must necessarily be based on the testimony of the witness Kenneth W. Casey relating to a certain act carried on between him and appellant which constituted sodomy. See § 28-919, R. R. S. 1943. I am sure the author of the opinion, as well as the other members of the court, are fully capable of and understand the difference between sodomy and adultery and what is required to establish either one or the other.

In view of what is said in the dissent in regard thereto it seems to me it is necessary to discuss somewhat in detail the facts established by the evidence adduced as they relate to the issue of adultery. Ordinarily a statement of our conclusion reached in regard thereto would be sufficient as a recitation of such facts serves no useful purpose and only leaves a permanent record to possibly embarrass the three small children here involved after they grow up. The dissent eliminates the basis of this restraint exercised by the writer of the majority opinion in dealing with the sordid facts recited in the evidence.

The record shows these parties had considerable trouble during the period of their married lives because of jealousy and drinking which often resulted in quarrels and abusive conduct. Later in their married life they were also bothered with financial problems. However, whatever happened in this regard was condoned by both and they apparently got along fairly well until April 28, 1956, when appellant wrote appellee a letter, addressed to him at Des Moines, Iowa, where he was then working, wherein she advised him that as far as she was concerned their marriage was all over and she did not care to see him again. Appellee had, prior thereto, been suspicious of appellant's relationship with Clark Triplett, who operated an appliance store in Broken Bow, Nebraska. After receiving appellant's letter he proceeded to find out if that relationship was

what caused their marriage to break up. He obtained the services of Myrl Jones, a private detective, to assist him in this effort. He was also assisted by his mother, Mary E. Baker, who lived in Broken Bow and had a business there.

As early as State v. Way, 5 Neb. 283, by adopting certain language from Thayer v. Thayer, 101 Mass. 113, we said of the crime of adultery, which, in a criminal action, must be proved beyond a reasonable doubt, that: " 'The evidence by which the act of adultery is proved is seldom direct. The natural secrecy of the act makes it ordinarily impossible to prove it, except by circumstantial evidence. The circumstances must be such, indeed, "as to lead the guarded discretion of a reasonable and just man to the conclusion of guilt." But when adulterous disposition is shown to exist between the parties at the time of the alleged act, then mere opportunity, with comparatively slight circumstances showing guilt, will be sufficient to justify the inference that criminal intercourse has actually taken place.' "

The evidence shows that for a long time appellant was, on many occasions, alone with Triplett and at such times they were conducting themselves in a manner that it was evident to those who observed them that their relationship was not merely that of friends but that each was interested in the other in an amorous way.

Mary E. Baker, appellee's mother, testified that about 10:45 p.m. on July 19, 1956, appellant and Triplett were in the latter's store and turned out the lights and stayed therein until about 1 a.m., July 20, 1956; that many evenings she saw them alone in Triplett's store; and that many times she saw them together and alone at places other than the store.

Myrl Jones and appellee both testified that on the evening of August 3, 1956, appellant went to the Triplett store; that when she went there she was neatly dressed and tidy in appearance; that apparently a beer party was being held in the store; that about 1:05 a.m.

on August 4, 1956, the last guest left leaving appellant and Triplett alone in the store; that all the lights in the store were then turned off except one red night light; that about 1:10 a.m. they saw appellant and Triplett embracing each other; that at dawn (4:45 a.m.) both Triplett and appellant left the store; that when she left her hair was mussed and her clothing untidy, her blouse being pulled out of her skirt; and that when he left his clothing was also untidy, his shirttail being out of his trousers. There are other incidents of like character described by Jones as having taken place on the evening of September 24, 1956, and again on September 25, 1956.

Sarah Ann Holm, who worked in the Baker home, testified that in the spring of 1954 appellant was talking to her in the kitchen of the Baker house and there told her the operation she had had, which resulted in some of her female organs being removed, would prevent her from bearing any more children; that she then took some contraceptives (rubbers) from her purse and said that because thereof (meaning the operation) she and Clark (meaning Triplett) would not be needing them anymore; and that she thereupon threw them in the wastebasket.

Kenneth W. Casey, with whom the Bakers became acquainted when they were running their resort near Park Rapids, Minnesota, in 1955, testified as to appellant's attitude while alone with him, which was on numerous occasions. He testified she tried to induce him to be intimate with her by her conduct and when that was not successful asked him to be, saying she had been intimate with Triplett at Broken Bow and just how they did it on his office swivel chair.

I could recite additional facts these several witnesses testified to which show appellant's attitude toward and desire for sexual relations with others than her husband during the period of their marriage and while they were living together and the fact that she satisfied such desires with Triplett. Naturally appellant denied being

intimate with Triplett but in view of what I have set forth the following from Speck v. Speck, 164 Neb. 506, 82 N. W. 2d 540, has application here: "Direct evidence, of course, is not ordinarily procurable to establish such improper conduct. But where the evidence and circumstances show, as they do here, that every element is present except direct proof of the act itself, the court is not required to close its eyes to the obvious. It may properly determine even as against the protestations of one or both of the parties that the result followed which usually grows out of such a relationship."

The record in this case presents one of the strongest cases of adultery against a party that I have reviewed since being on the court and, in my opinion, fully satisfies all the requirements as to the burden of proof which is placed on a party seeking a divorce. It presents a factual situation which establishes the fact that appellant is totally unfit to raise the minor children and the sooner they are removed from her custody and placed with appellee the better it will be for their future welfare.